**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0552n.06
Filed: September 9, 2008

Case No. 07-3863

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WAFAA HUSSEIN DIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | OF A DECISION OF THE |
| | ) | BOARD OF IMMIGRATION |
| MICHAEL B. MUKASEY, United States | ) | APPEALS |
| Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**BEFORE: SILER, BATCHELDER, and ROGERS, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Petitioner Wafaa Hussein Dia ("Dia") petitions this court for review of the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of (1) protection under the Convention Against Torture ("CAT"), and (2) Dia's request for a continuance regarding her petition for voluntary departure. For the reasons stated herein we DENY the petition for review and AFFIRM the BIA's decision.

## I. BACKGROUND

Dia is a thirty-seven year old citizen of Lebanon who is a member of the Shiite Muslim faith. On November 15, 1994, Dia entered the United States as a non-immigrant visitor for pleasure, authorized to remain in the United States until May 15, 1995. She remained in the United States beyond this date, in violation of her temporary visa. On January 27, 2003, Dia was served with a

Notice to Appear ("NTA") charging her with remaining in the United States beyond the time permitted, making her deportable under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA").

Dia conceded her removability as well as the factual allegations in her NTA. On June 1, 2004, she filed an I-589 application for withholding pursuant to § 241(b)(3) of the INA and a request for withholding of removal pursuant to CAT. Dia's INA and CAT claims are premised on her fear that she will be subject to an "honor killing" if she returns to Lebanon. Dia bore a child out of wedlock on August 6, 1998, which she says has brought shame to her conservative Shiite Muslim family, many of whom, including her parents and several brothers, reside in Maraki, Lebanon. Dia claims that her family will kill her if she returns to Lebanon. As an alternative to her withholding claims, Dia also requested voluntary departure pursuant to § 240B(b) of the INA.

Dia's initial hearing took place on July 26, 2005, but was continued until November 18, 2005, in order to give Dia and her counsel opportunity to submit additional documentation of her daughter's birth and Dia's divorce, and to submit additional information about honor killings in Lebanon. When the court reconvened on November 18, 2005, the IJ denied all of Dia's requests. The IJ found that Dia had failed to meet her burden under both the INA and CAT because she failed to demonstrate that she would more likely than not be tortured if she were removed to Lebanon. Because Dia did not have a valid passport to secure entry into Lebanon and therefore did not meet the applicable statutory requirements, the IJ denied her request for voluntary departure. Finally, the IJ declined Dia's counsel's request for a continuance in order to procure a valid passport.

On December 15, 2005, Dia submitted a Notice of Appeal to the BIA, appealing the IJ's denial of CAT protection as well as the IJ's refusal to grant a continuance for voluntary departure.

She did not appeal the IJ's denial of withholding pursuant to § 241(b)(3) of the INA. On June 1, 2007, the BIA affirmed the IJ's decision with additional comments. On July 2, 2007, Dia petitioned this court for review.

## II. ANALYSIS

### A. The IJ's denial of protection under CAT

When, as in this case, the BIA expressly affirms the IJ's decision but adds its own comments, we review both the IJ's decision and the BIA's additional comments. *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). We apply the "substantial evidence standard," *Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (2008), under which the IJ's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," *id.* at 672-73 (internal citations and quotations omitted).

To qualify for protection under CAT, a petitioner must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2);[1] *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006). The statute defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purpose as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). When assessing the likelihood of torture upon the applicant's removal,

---

[1]The language of 8 C.F.R. § 1208.16 is identical to 8 C.F.R. § 208.16. Section 208.16 is from Title 8, Chapter I, Department of Homeland Security (Immigration and Naturalization). Section 1208.16 is from Title 8, Chapter V, Executive Office for Immigration Review, Department of Justice. The government's brief cites exclusively to § 1208.16, and we have followed that convention.

the courts should look to: (1) evidence that the applicant has been tortured in the past; (2) evidence that the applicant can relocate to a safer part of the country; (3) evidence of gross, flagrant, or mass human rights violations in the country; and (4) any other information regarding the conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3).

In this case, the IJ noted that Dia failed to establish the Lebanese government's complicity or acquiescence in honor killings. CAT protection does not cover "torture that occurs as a wholly private act." *Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2000) (internal citations omitted). Government acquiescence includes both "willful blindness" and actual knowledge, *id.*, but is not established by proof of the mere existence of the problem of honor killings in the country. *See Rreshpja v. Gonzales*, 420 F.3d 551, 557 (6th Cir. 2005) (holding that the existence of a human trafficking problem in Albania did not, alone, establish government acquiescence). While there is some evidence that under Lebanese law those who commit honor killings are sentenced less harshly than those who kill for other reasons, we need not determine whether that constitutes government complicity because Dia's claims fail for other reasons.

The IJ reasonably concluded that Dia failed to establish that she will more than likely be tortured if she is removed to Lebanon. Dia makes vague claims that her family sent her death threats through "Lebanese people" who have visited the United States, but she presented no witnesses and submitted no evidence beyond her own speculation to suggest that her family members engage in honor killings. Uncorroborated testimony may, in some instances, be sufficient to establish a likelihood of torture, *see* 8 C.F.R. § 1208.16(c)(2) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration"), but here, the IJ found that Dia's

testimony was not credible.[2]  In light of the numerous inconsistencies in Dia's account of her circumstances, we cannot conclude that this determination is unreasonable: she misstated or revised several significant dates, including those of her divorce from her first husband and her marriage to her second husband; she repeatedly misrepresented her address; she was uncertain about various facts surrounding the care and custody of her first daughter; and she offered contradictory accounts of altercations with her many male companions.  Although some of these inconsistencies are minor, their "cumulative effect" supports the IJ's adverse credibility finding.  *See Berri*, 468 F.3d at 395-96 ("We hold that given the number of inconsistencies and the lack of corroborating evidence to support the [aliens'] statements, the IJ's credibility determination was a reasonable one, and we are inclined to follow it.").

Similarly, Dia's evidence of honor killings in Lebanon failed to establish the requisite likelihood of torture.  Many of the newspaper articles she submitted do not even pertain to Lebanon. *See* J.A. 220-22 (honor killings in Jordan); J.A. 223-24 (honor killings of Palestinian and Bedouin women); J.A. 225-26 (honor killings in Germany); J.A. 234-37 (honor killings in Nigeria, Iran, Saudi Arabia, and Pakistan).  The articles that do address Lebanon suggest that only a few honor killings take place each year.  J.A. 240.  Although even a single honor killing is abhorrent, Dia has not shown that honor killings in Lebanon are so prevalent as to meet CAT's requisite likelihood of torture.

The IJ reasonably concluded that Dia failed to present evidence establishing that she would more likely than not be tortured upon removal to Lebanon.  We therefore affirm the BIA's denial of CAT protection.

### B. The IJ's denial of a continuance for voluntary departure

---

[2]Contrary to her assertions, the IJ *did* make an adverse credibility finding against Dia.

-5-

We review for abuse of discretion the IJ's denial of a continuance. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). We will overturn that decision only if the denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id.* (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

In this case, the IJ did not irrationally, inexplicably, or otherwise impermissibly deny Dia's request for a continuance, which was made during the hearing on November 18, 2005, nearly a year and a half after her initial request for voluntary departure, and some four months after the IJ had continued the July 26 hearing in order to permit Dia and her counsel time to prepare and obtain additional documents pertaining to her application (although not specifically regarding her request for voluntary departure). Dia had ample time to gather the statutorily required documents to support her request for voluntary departure, and the IJ did not abuse his discretion by denying her request for further delay.[3]

In her petition for review, Dia attempts to argue that her request for voluntary departure was prejudiced by her ineffective counsel, who failed to advise her that she needed to present a valid passport to the court in support of her request. Because this argument was not raised before the BIA, it cannot be raised before this court. *Gilaj v. Gonzales*, 408 F.3d 275, 289 (6th Cir. 2005) ("Only those claims that have been properly presented to the BIA and considered on their merits can be reviewed by the court in an immigration appeal."). Moreover, even if this argument were properly

---

[3]In her brief, Dia claims that the IJ denied her request for a two hour continuance in order to obtain a valid passport at the Lebanese consulate, located two miles away. This is not an accurate representation of the actual request: Dia's counsel in fact asked for "a short period of time" to "get a letter from the consulate" in order to "get all this cleared up."

before us, we would find it unavailing. In the immigration context, arguments regarding ineffective counsel must point to a violation of the Fifth Amendment's Due Process Clause. *See Nikollbibaj v. Gonzales*, 232 F. App'x 546, 556 (6th Cir. 2007). However, "an alien does not have a constitutionally protected interest in receiving discretionary relief from removal or deportation," *Ramirez v. Gonzales*, 247 F. App'x 782, 786 (6th Cir. 2007), and both voluntary departure and continuances are discretionary forms of relief, *see Abu-Khaliel*, 436 F.3d at 630-31, 634 (discussing the discretionary nature of continuances and voluntary departure). Thus, regardless of how deficient Dia's counsel was with respect to her voluntary departure request, Dia was not deprived of any due process rights and therefore did not receive *constitutionally* ineffective assistance of counsel. *See, e.g.*, *Jamieson v. Gonzales*, 424 F.3d 765, 768 (8th Cir. 2005) (rejecting an alien's ineffective counsel argument because an alien has no constitutionally protected liberty interest at stake when seeking discretionary relief).

Accordingly, the IJ did not abuse its discretion in denying Dia's request for a continuance.

### III. CONCLUSION

For the foregoing reasons, we **deny** the petitioner's request for review, and **affirm** the BIA's decision affirming the IJ's denial of CAT protection and voluntary removal.