**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0091n.06

No. 10-3662

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 25, 2012*

LEONARD GREEN, Clerk

)
)
JUANA HERNANDEZ,                              )
)
    Petitioner–Appellant,                    )
)    ON PETITION FOR REVIEW FROM
v.                                           )    AN ORDER OF THE BOARD OF
)    IMMIGRATION APPEALS
ERIC H. HOLDER, JR.,                         )
)
    Respondent–Appellee.                     )
)

Before: MARTIN and GIBBONS, Circuit Judges; STEEH, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-Appellant Juana Hernandez petitions

for review of a Board of Immigration Appeals ("BIA") order that affirmed an Immigration Judge's

("IJ") decision denying her application for Temporary Protected Status ("TPS") and ordering her

removed to El Salvador. The IJ denied relief and the BIA affirmed on the ground that Hernandez's

TPS application was untimely. Hernandez argues that the IJ erred in denying her TPS application

and in failing to equitably toll the deadline for TPS registration.

    For the reasons set forth below, we deny Hernandez's petition for review.

---

[*]The Honorable George Caram Steeh, III, United States District Judge for the Eastern District
of Michigan, sitting by designation.

I.

Hernandez, a citizen of El Salvador, came to the United States on January 11, 2001, on a visitor visa and has remained in this country continuously since then. Hernandez's visitor visa expired in July of 2001, and she did not apply for a change of status or extension of status at that time. Hernandez has thus been "out of status" since July of 2001.

On January 13, 2001, and February 13, 2001, El Salvador was devastated by two major earthquakes, leading the Attorney General to designate El Salvador under a TPS program effective March 9, 2001. *See* 66 Fed. Reg. 14,214 (March 9, 2001).[1] El Salvador's initial TPS designation was effective until September 9, 2002. *Id.*

On August 23, 2002, seventeen days before El Salvador's initial TPS designation expired, Hernandez filled out and sent to INS a TPS application with the assistance of Deborah Hartman, a staff member at an organization called El Centro de Familia. However, Hernandez's application was returned to her in December of that year because a required signature and the required fee were missing. When the application was returned, Hernandez, with the help of Maria Delgado, also a member of El Centro de Familia's staff, supplied the missing signature and sent the application back to INS with the correct fee. Hernandez sent the application back to INS around Christmas of 2002,

---

[1]The Attorney General may designate a foreign state for TPS if the state is experiencing ongoing armed conflict, environmental disaster, or other extraordinary and temporary conditions. *See* 8 U.S.C. § 1254a(b). An alien who is a national of a foreign state designated for TPS may apply for temporary protected status, which protects the alien from removal during the period in which the state's TPS remains in effect. 8 U.S.C. § 1254a(a).

and the application was received at INS's Nebraska Service Center on December 30, 2002.[2] Neither

Hartman nor Delgado are attorneys.

On March 24, 2003, INS notified Hernandez of its intent to deny her application for TPS on

the ground that Hernandez failed to qualify for late registration of TPS. Hernandez then sought free

help in submitting her application from a lawyer in Detroit and from a Michigan church called

Mount Zion.

On August 9, 2004, Hernandez filed another TPS application. On October 4, 2004, INS

again advised Hernandez of its intent to deny her TPS application because she was not eligible for

late registration. On November 22, 2004, Hernandez's second application for TPS was denied.

Hernandez appealed the denial of her second TPS application. In a letter submitted with her appeal,

Hernandez claimed that her 2002 TPS application was filed late because Hartman had addressed it

to the wrong building. Hernandez acknowledged in her letter that her December 2002 re-submission

of her application was filed after the initial TPS registration period expired. The Administrative

Appeals Office dismissed her appeal, and the U.S. Citizenship and Immigration Services sent

Hernandez notice of this decision on January 26, 2006.

---

[2]Hernandez's 2002 TPS application contains two date stamps reflecting the dates on which the document was received by INS. The first date stamp of September 27, 2002—apparently the date on which Hernandez's first TPS application was received by INS—is lined out. The second date stamp reflects receipt of the application by INS on December 30, 2002.

The Department of Homeland Security ("DHS") initiated removal proceedings against Hernandez on April 13, 2006.[3] A hearing was held before Judge Elizabeth Hacker of the United States Immigration Court in Detroit, Michigan, and Judge Hacker issued an oral decision denying Hernandez's application for TPS and ordering her removed and deported to El Salvador. The IJ held that Hernandez had failed to timely file a complete TPS application by the September 9, 2002, filing deadline and that Hernandez did not qualify for late registration. Hernandez appealed.

The Board of Immigration Appeals ("BIA") dismissed Hernandez's appeal, adopting and affirming IJ Hacker's decision. The BIA concluded that Hernandez had not established that her 2002 TPS application was filed late as the result of the ineffective assistance of counsel. The BIA noted that Hernandez's claim that her application was returned to her because Hartman sent it to the wrong address conflicted with her testimony that her application was returned because it was missing a signature and did not have the correct fee. Given these inconsistencies, the BIA concluded, Hernandez had not established that her initial TPS application was untimely because its preparer improperly addressed the envelope in which the application was sent. This appeal followed. Hernandez asserts on appeal that the IJ erred in denying Hernandez's TPS application and erred in declining to equitably toll the September 9, 2002, deadline for filing for TPS.

---

[3]On June 1, 2006, Hernandez filed a lawsuit against DHS and United States Citizenship and Immigration Services in the United States District Court for the Eastern District of Michigan seeking judicial review of the denial of her application for TPS. Defendants moved to dismiss the lawsuit on the ground that the district court lacked jurisdiction, and the district court granted their motion.

II.

This court has exclusive jurisdiction over final orders of removal pursuant to 8 U.S.C. §

1252(a)(1) and 28 U.S.C. § 2341 *et seq.*

Where the BIA adopts the IJ's reasoning and provides additional commentary, we review the

IJ's decision, as supplemented by the BIA, as the final administrative order. *Ceraj v. Mukasey*, 511

F.3d 583, 588 (6th Cir. 2007); *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005). Questions

of law are reviewed *de novo*, but the IJ's factual findings will be affirmed if supported by substantial

evidence. *Ceraj*, 511 F.3d at 588. We will only reverse an IJ's factual determinations if we find

"that the evidence not only supports a contrary conclusion, but *compels* it." *Id.* (citation and internal

quotation marks omitted) (emphasis in original).

III.

Hernandez argues that the IJ erred in denying her application for TPS because Hernandez

timely filed her TPS application on August 23, 2002, Hartman sent the application to the wrong

address, and INS unreasonably delayed in returning the application to her four months later, causing

her to miss the September 9, 2002, filing deadline. Hernandez further argues that any regulations

relied on to deny her application are unlawful because they are inconsistent with the clear intent to

protect Salvadorians, as expressed by the designation of El Salvador for TPS.

On March 9, 2001, the Attorney General designated El Salvador as a TPS country due to

damage caused by earthquakes that occurred in January and February of that year. 66 Fed. Reg.

14,214 (March 9, 2001). Nationals of El Salvador who had been "continuously physically present"

in the United States since March 9, 2001, and had "continuously resided" in the United States since

February 13, 2001, could apply for TPS within a registration period beginning on March 9, 2001, and ending on September 9, 2002. *Id.*

Nationals of El Salvador who did not file a TPS application during the initial registration period could register during a subsequent extension of El Salvador's TPS designation only if, during the initial registration period,

> the applicant: (1) [was] a nonimmigrant; (2) had been granted voluntary departure status or any relief from removal; (3) had made an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal that was pending or subject to further review or appeal; (4) was a parolee or had a pending request for parole; or (5) was a spouse or child of an alien eligible to be a TPS registrant.

*Id.*

An applicant for late registration was required to register within sixty days of the expiration or termination of one of the conditions described in items (1) through (5) above. *Id.* El Salvador's TPS designation was extended seven times and is currently in effect until March 9, 2012. 67 Fed. Reg. 46,000 (July 11, 2002); 68 Fed. Reg. 42,071 (July 16, 2003); 70 Fed. Reg. 1,450 (Jan. 7, 2005); 71 Fed. Reg. 34,637 (June 15, 2006); 72 Fed. Reg. 46,649 (Aug. 21, 2007); 73 Fed. Reg. 57,128 (Oct. 1, 2008); 75 Fed. Reg. 39,556 (July 9, 2010). However, in order to be covered by these extensions, an alien must have registered during the initial registration period or must have qualified under the late registration requirements. 66 Fed. Reg. 14,214 (March 9, 2001). Hernandez does not argue on appeal that she qualified for late registration.

The IJ properly found that Hernandez failed to timely file a complete TPS application during the initial registration period. The first date stamp on Hernandez's 2002 TPS application—reflecting the date on which her application was received by INS—is September 27, 2002. Hernandez's

application was thus received after the September 9, 2002, deadline for initial registration. The only evidence Hernandez presented to support her claim that her application was timely filed was her testimony that she mailed the application, with Hartman's help, on August 23, 2002. However, Hernandez claimed that Hartman mailed her application to the wrong building, which could potentially explain its tardy receipt. Hernandez presented no other evidence that her application was timely filed. Further, Hernandez conceded in removal proceedings that the application she sent on August 23, 2002, was incomplete because it lacked a required signature and the proper filing fee. Thus, there was substantial evidence in the record from which the IJ could conclude that Hernandez failed to file a complete TPS application by the filing deadline.

Hernandez does not argue that her application was received in time; rather, she argues that INS unreasonably delayed in returning it to her to allow her to make necessary corrections, causing her to miss the September 9, 2002, deadline. Hernandez cites no authority for the proposition that immigration agencies must expeditiously return deficient TPS applications to applicants to allow them to remedy the deficiencies before certain deadlines. According to her own testimony, Hernandez sent her application on August 23, 2002, a mere seventeen days before the initial registration deadline and over seventeen months after the initial registration period opened. If anyone unreasonably delayed in this case it was Hernandez, not INS.

Hernandez next argues that any regulation relied on to deny her TPS in this case is unlawful since the regulation would be inconsistent with the Immigration Act and the intent to protect Salvadorians evidenced by the designation of El Salvador for TPS. This argument is meritless. In setting an initial registration deadline of September 9, 2002, the Attorney General clearly expressed

his intent to limit the grant of TPS to those who complied with that deadline. *See* 66 Fed. Reg. 14,214 (March 9, 2001). The Attorney General established an eighteen-month window in which Salvadorians could apply for TPS, and Hernandez failed to submit a complete application within that window, despite being present in the United States the entire time. Hernandez has cited no authority to support her claim that enforcing the September 9, 2002, deadline is "contrary to" the intent of the Attorney General or inconsistent with the Immigration Act.

Finally, Hernandez argues that she "did everything possible to timely register for TPS status." This is contradicted by the record. Although Hernandez entered the country in January of 2001 and could have applied for TPS as early as March of 2001, she waited over seventeen months to apply for TPS. Because Hernandez did not timely file a complete TPS application, the IJ properly denied her temporary protected status.

IV.

Hernandez next argues that the IJ erred by failing to equitably toll the deadline for filing an initial TPS application because the deadline was missed due to "technical errors and administrative delays." Hernandez asserts that the application deadline should have been equitably tolled because INS unreasonably delayed in returning her TPS application to her for correction, causing her to miss the September 9, 2002, deadline for initial registration. Hernandez further argues that the errors of El Centro de Familia's staff in helping her prepare her application entitled her to equitable tolling because she was rendered ineffective assistance.

Administrative agency filing deadlines—such as the deadline for filing a TPS application— may be equitably tolled in appropriate circumstances. *See AAU WAC 06 007 70270*, 2007 WL

5337538 (INS) (equitably tolling TPS filing deadline because Los Angeles Office of Department of Homeland Security failed to forward complete, timely filed TPS application to processing center); *see generally Hampton v. Caldera*, 58 F. App'x 158, 160 (6th Cir. 2003) (noting that administrative exhaustion requirements in Title VII context are subject to equitable tolling); *Sawchik v. E.I. Dupont Denemours & Co.*, 783 F.2d 635, 638 (6th Cir. 1986) (finding 300-day period for filing charge with EEOC subject to equitable tolling). Therefore, the IJ erred when she implied that she lacked the power to equitably toll the TPS filing deadline. However, this error was harmless, because Hernandez presented insufficient evidence that she was entitled to equitable tolling of the TPS filing deadline.

Hernandez's TPS application was returned to her in December of 2002— approximately four months after she submitted it—because it was missing a required signature and the required filing fee. Although equitable tolling of a filing deadline may be appropriate where the *government's error* caused an applicant to miss a TPS filing deadline, *see AAU WAC 06 007 70270*, 2007 WL 5337538 (INS), Hernandez cites no authority for the proposition that the deadline should be tolled due to an *applicant's errors* that caused her to miss a filing deadline.

The facts of Hernandez's case are materially distinguishable from those in the *AAU* case on which she relies. In that case, the applicant filed a complete TPS application with the appropriate filing fee during the TPS registration period, and the Los Angeles Office of DHS failed to forward her application to the California Service Center. *See id.* The DHS office's failure to forward the application caused the applicant to miss the registration deadline. *Id.* By contrast, Hernandez does not claim that the government erred in processing her application—she claims only that the

government did not process her application and return it to her with notice of its deficiencies soon enough to allow her to re-apply before the registration deadline. We are aware of no authority that would support Hernandez's argument that the government's failure to quickly process and return a deficient application entitles her to equitable tolling of the missed filing deadline.[4]

In the statute of limitations context, this court has only applied equitable tolling where "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). Hernandez has not shown that her failure to file a complete TPS application before the deadline was due to circumstances beyond her control, further undermining her equitable tolling argument.

Nor did Hernandez act with diligence in applying for TPS. *See generally Gordillo v. Holder*, 640 F.3d 700, 703–04 (6th Cir. 2011) (holding that alien must demonstrate diligence to be entitled to equitable tolling of deadline to move to reopen or reconsider removal proceedings). Hernandez delayed over seventeen months, from March 2001 to November 2002, before sending in her TPS application. Hernandez essentially waited until the eleventh hour to submit an application, but faults INS for failing to process and return her application in time for her to re-submit it by the September

---

[4]It might be possible to infer government error in a situation in which the government's delay in processing an application was unusually protracted. However, in this case, INS would have had to process Hernandez's application and return it to her within seventeen days for her to have received it before the filing deadline. Under these circumstances, no government error can reasonably be inferred.

9, 2002, deadline. Hernandez did not show that she acted with the diligence necessary to entitle her to equitable tolling.

Finally, Hernandez argues that she was entitled to equitable tolling of the TPS filing deadline because staff at El Centro de Familia rendered "ineffective assistance" when they misaddressed the envelope in which her TPS application was mailed. In *Matter of Lozada*, the BIA held that a motion to reopen or reconsider based on ineffective assistance of counsel in a deportation proceeding should be supported by (1) an affidavit setting forth in detail the agreement that was entered between the client and former counsel and (2) if the petitioner asserts that counsel's handling of the case involved a violation of ethical or legal responsibilities, an affidavit attesting to whether a complaint was filed with appropriate disciplinary authorities regarding such representation, and if not, why not. 19 I. & N. Dec. 637, 1988 WL 235454 (BIA). The *Lozada* decision also dictated that the alien's former counsel be informed of and given an opportunity to respond to the allegations of ineffective assistance. *Id.* INS's Administrative Appeals Office has applied the *Lozada* affidavit requirements to claims that an applicant missed a TPS filing deadline due to the ineffective assistance of counsel. *See* 2010 WL 6527359 (INS) (June 2, 2010).

Under the *Lozada* test, Hernandez has failed to show she is entitled to equitable tolling of the TPS filing deadline due to ineffective assistance. First, Hernandez testified that neither of the women who helped her at El Centro de Familia—Hartman and Delgado—were attorneys, and there is no evidence in the record that Hartman or Delgado was an "accredited representative" under 8 C.F.R. §§ 1292.1(a)(4) and 1292.2(d). *See Al Roumy v. Mukasey*, 290 F. App'x 856, 861–63 (6th Cir. 2008) (applying *Lozada* to claim that ineffective assistance was provided by non-attorney

representative accredited by the BIA). Hernandez filed no grievance against Hartman or Delgado related to their alleged "ineffective assistance." There is also no evidence in the record that Hernandez entered into an agreement with the staff of El Centro de Familia to obtain legal representation. Thus, Hernandez is not entitled to equitable tolling of the TPS filing deadline on the ground of ineffective assistance.

V.

For the foregoing reasons, we deny Hernandez's petition for review.