NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0753n.06

No. 12-3043

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 13, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSE FRANCISCO CALLEJAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | OPINION |
| Respondent. | ) | |

**Before: SUTTON and STRANCH, Circuit Judges, and STEEH, District Judge.***

**JANE B. STRANCH, Circuit Judge**. In 1989, in the waning years of El Salvador's bloody civil war, Jose Francisco Callejas entered the United States without admission or parole. When his attempts to regularize his status over the ensuing 15 years failed, he hired a lawyer to represent him in removal proceedings. The immigration court denied Callejas relief and the Board of Immigration Appeals (BIA) later turned away his appeal. Callejas then retained a new lawyer who asked the BIA to reopen his removal proceedings, alleging that Callejas's first lawyer provided ineffective assistance of counsel. The BIA denied that motion and Callejas now appeals. Because the Board did not abuse its discretion when it rejected Callejas's effort to reopen his removal proceedings, we **DENY** his petition.

---

*The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

Jose Francisco Callejas is a native and citizen of El Salvador who entered the United States in September 1989 without admission or parole. He filed an asylum application with the former Immigration and Naturalization Service (INS) in 1990 and again in 1997, but his application remained unadjudicated. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (transferring INS's functions from the Department of Justice to the Department of Homeland Security). From the time he entered the United States in 1989 until he was removed to El Salvador in February 2012, Callejas left the country one time in order to care for his sick mother from December 9, 2000, to April 30, 2001, a total of 142 days. Callejas informed the government of his intent to travel to El Salvador before he left, and received a grant of "advance parole" that allowed him to re-enter the United States within six months and resume the status he had before he departed. Callejas returned to the United States without incident.

In November 2003, Callejas submitted to the Department of Homeland Security (DHS) an application for special rule cancellation of removal under the § 203 of the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, 111 Stat. 2160 (1997). NACARA made certain cancellation-of-removal provisions available to a limited class of undocumented immigrants, including Salvadoran nationals like Callejas. One year later, United States Citizenship and Immigration Services denied Callejas's NACARA application after it determined that he could not show continuous physical presence in the United States in the seven years preceding his application because his 142-day absence exceeded the 90-day maximum allowed by law. *See* 8 C.F.R. §§ 240.64(b)(2), 240.66(b)(2). The agency also denied Callejas's asylum

application and referred his case to the immigration court. On January 18, 2005, DHS charged Callejas with removability as an undocumented immigrant present in the United States without admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

In 2006, Callejas appeared before an immigration judge represented by attorney Bethany McAllister. McAllister conceded Callejas's removability but explained that he planned to seek cancellation of removal under NACARA, as well as other forms of relief. She also informed the court that Callejas was eligible for Temporary Protected Status (TPS), an immigration status granted to eligible nationals of certain countries. *See* 8 U.S.C. § 1254a(b)(1). The immigration judge responded that TPS is "not a relief that's before the Court," and McAllister did not press the issue any further.

McAllister represented Callejas at his merits hearing before the immigration court on June 25, 2007. Although his NACARA claim was discussed, McAllister conceded from the outset that Callejas's trip to El Salvador made him ineligible for relief. The immigration judge issued an oral decision denying Callejas all forms of relief, which McAllister appealed to the BIA in July 2007. She did not seek review of the immigration judge's denial of Callejas's NACARA claim, nor of the judge's determination that the immigration court could not consider his TPS application. More than two years later, McAllister filed a two-page brief in support of Callejas's other grounds for relief. The BIA rejected the appeal on June 8, 2011.

Callejas retained new counsel, attorney Oscar Rodriguez, who filed a motion to reopen Callejas's application after the BIA turned away his initial appeal. Rodriguez faulted McAllister for failing to pursue Callejas's TPS application and to challenge the denial of his NACARA claim,

concluding these omissions prejudiced Callejas because he was eligible for both forms of relief.

Rodriguez also purported to file Callejas's TPS application, which McAllister had never done. The

BIA denied Callejas's motion to reopen on December 16, 2011. With respect to the TPS issue, the

BIA reasoned that Callejas's motion did not include evidence to show that he met TPS requirements.

As for his eligibility for NACARA relief, the BIA observed that Callejas's claim was premised on

an unprecedented legal position that McAllister could not be faulted for failing to advance.

On January 13, 2012, Callejas filed a petition for review of his motion to reopen, which is

now before us. *See* 8 U.S.C. § 1252(a).

## II. ANALYSIS

We review the BIA's denial of a motion to reopen for an abuse of discretion. *See INS v.*

*Doherty*, 502 U.S. 314, 323 (1992); *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). The BIA

abuses its discretion when its denial is without rational explanation, inexplicably departs from

established policies, or rests on an impermissible basis, such as invidious discrimination. *See Sako*,

434 F.3d at 863. We review claims of ineffective assistance of counsel de novo. *Id*.

A successful motion to reopen before the BIA based on the ineffective assistance of counsel

must satisfy two conditions. *Id*. First, it has to meet the requirements set forth in *Matter of Lozada*,

19 I. & N. Dec. 637, 639 (BIA 1988).[1] Specifically, *Lozada* requires the motion to reopen to be

supported by an affidavit detailing counsel's failings, proof that counsel was informed of the

---

[1]The Attorney General vacated *Lozada* in *Matter of Compean*, 24 I. & N. Dec. 710 (BIA 2009), but then vacated *Compean* in *Matter of Compean*, 25 I. & N. Dec. 1 (BIA 2009). Thus, immigration judges continue to apply *Lozada* to motions to reopen based on ineffective-assistance-of-counsel claims.

allegations, and evidence that the petitioner filed disciplinary charges with the appropriate authorities. *See Sako*, 434 F.3d at 863. Neither party disputes that Callejas complied with *Lozada*. Second, the petitioner must show he was prejudiced by his attorney's action or inaction. To do so, he has to demonstrate that "but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States." *Id*. at 864. The prejudice inquiry does not require proving the certainty of entitlement, but focuses instead on whether a petitioner's claims "could have supported a different outcome." *Id*.

The government insists at the threshold that Callejas may not bring a claim of ineffective assistance of counsel because the Fifth Amendment does not protect his interest in discretionary relief. We have not squarely addressed this issue in a published opinion.[2] But this case does not present the occasion to do so because even if Callejas's constitutionally protected interest in a full and fair opportunity to seek relief is not abrogated by the relief's discretionary nature, Callejas cannot show that his counsel gave him bad advice or that he was prejudiced as a result.

## A.    Special rule cancellation of removal under NACARA

Callejas's motion to reopen his proceedings challenged his previous counsel's failure to appeal the immigration judge's conclusion that he could not meet the continuous-physical-presence

---

[2]Our prior decisions, in fact, point in different directions. *Compare Gordillo v. Holder*, 640 F.3d 700, 701, 703 (6th Cir. 2011) (vacating the BIA's denial of a motion to reopen removal proceedings brought by petitioners who claimed that counsel's ineffective assistance resulted in the denial of discretionary relief they sought under NACARA) *and Reda v. Mukasey*, 294 F. App'x 182, 185–86 (6th Cir. 2008) (holding that counsel's failures, however egregious, did not deprive petitioner of any due-process rights "because the relief sought was purely discretionary"); *Dia v. Mukasey*, 292 F. App'x 468, 472 (6th Cir. 2008) (same, in dicta).

requirement to establish eligibility for NACARA relief. This is the only dispute on appeal with respect to NACARA, as the parties agree that Callejas met the other requirements.

Special rule cancellation is a unique form of relief that empowers the Attorney General to adjust the status of certain groups of immigrants who, among other things, have been "physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application" for relief. NACARA § 203(b); *see also* 8 C.F.R. § 1240.66(b)(2). An applicant cannot meet the requirement if he departs the United States "for any period in excess of 90 days." 8 C.F.R. § 1240.64(b)(2). The immigration judge found Callejas did not meet this requirement because he departed the United States on one occasion from December 9, 2000, until April 30, 2001, exceeding the 90-day maximum.

Callejas does not dispute that he left the country during that period. Instead, he urges that McAllister was ineffective because she should have argued that the advanced parole Callejas obtained before leaving the country excused the lapse in his continuous presence. Callejas points out that the advanced-parole authorization issued to him stated that he "intends to return to the United States to resume processing of [his] adjustment of status application." Callejas thinks that McAllister should have argued that an authorized absence cannot break an applicant's period of continuous physical presence for purposes of NACARA relief.

This line of reasoning does not do the work Callejas hopes. Advance parole only assures that an immigrant who lacks lawful permanent residency "will be paroled back into the United States upon return, under prescribed conditions, if he cannot establish that he is admissible at that time," *Matter of G-A-C-*, 22 I. & N. Dec. 83, 88 (BIA 1998); it does not guarantee that an immigrant's lapse

in continuous presence will be excused. Callejas acknowledged before the Board that his claim involves a legal position that precedent does not support. And "[w]hile one could argue whether [Callejas] fully understood the significance of his departure and whether clearer language could or should have been used to advise him of the consequences of his departure, those issues are not determinative of the question of statutory or regulatory authority." *Id*. at 89. McAllister's failure to make this argument was not constitutionally deficient.

Before we heard oral argument in this case, we requested that counsel for the parties address two issues related to Callejas's NACARA claim. First, we asked whether the BIA should have applied *Matter of Garcia*, 24 I. & N. Dec. 179 (BIA 2007), to resolve Callejas's eligibility for NACARA relief. In *Garcia*, the Board held that an applicant for special rule cancellation of removal under NACARA accrues physical presence until the issuance of a "final administrative decision." 24 I. & N. Dec. at 183. Garcia had not been in the country continuously for seven years at the time she filed her NACARA application, but accrued seven years by the time the immigration judge denied her application. *Id*. at 180. The Board held that Garcia's continuous-physical-presence period ran through the immigration judge's decision. *Id*. at 183–84.

Whatever *Garcia*'s relevance might be, however, we need not address its application to Callejas's claim for relief because we answer the second question we posed to counsel—whether it made a difference that Callejas failed to raise *Garcia*—in the affirmative. Callejas never mentioned *Garcia* during the agency's administrative adjudication, in his motion to reopen his application, or when he sought judicial review, thus forfeiting any argument based on it. *See United States v. Jones*, 132 S. Ct. 945, 954 (2012). And, more broadly, because Callejas cannot show that McAllister was

ineffective with respect to his NACARA claim, the Board did not abuse its discretion in denying his motion to reopen on this basis.

## B.     Temporary Protected Status (TPS)

Callejas next argues that the BIA erred in denying his motion to reopen his proceedings because he demonstrated his prima facie eligibility for TPS.  Congress established four eligibility requirements for nationals of TPS-designated countries.  *See* 8 U.S.C. § 1254a(c)(1)(A); 8 C.F.R. § 244.2(a)–(f)(1).  Just one, though, is relevant here.  An applicant must register for TPS during the initial registration period established by the Secretary, but if he fails to do so, he may qualify for late initial registration if a country's TPS designation is extended, *see* 8 U.S.C. § 1254a(b)(3), and certain conditions are met, *see* 8 C.F.R. § 244.2(f)(2).  He can also file late if he has an application for "asylum . . . or any relief from removal . . . pending or subject to further review or appeal" during the initial registration period.  *Id*. § 244.2(f)(2)(ii).  In that case, he must file for TPS within 60 days after the expiration or termination of the underlying application that qualifies him for late registration.  *Id*. § 244.2(g).

The gravamen of Callejas's ineffective-assistance argument is that McAllister's failure to press for TPS prejudiced him because he was eligible for it at the time the immigration court heard his case.  Callejas cannot prevail with this argument, however, because he has not established his qualification for late filing.  Callejas admits that he did not apply for TPS during El Salvador's initial designation period, which ran from March 9, 2001, to September 9, 2002.  *See* 66 Fed. Reg. 14214, 14214 (Mar. 9, 2001).  Instead, he argues that he could file late because his 1990 asylum application

was "pending or subject to further review or appeal" at the time of the initial registration period, *see* 8 C.F.R. § 244.2(f)(2)(ii), and remained this way until the Board affirmed its denial in June 2011.

Even assuming that Callejas's asylum application qualified him for late filing while it was pending, he still was required to file for TPS within 60 days of the termination of the underlying asylum application. *See* 8 C.F.R. § 244.2(g). Callejas did not do so. The BIA denied his asylum appeal on June 8, 2011, and he did not file his TPS application until September 6, 2011. As a result, his TPS application was facially untimely.

That is not necessarily the end of the matter, though, as equitable tolling may be available to prevent manifest injustice in immigration cases alleging ineffective assistance of counsel. *See Gordillo v. Holder*, 640 F.3d 700, 701, 703 (6th Cir. 2011). And, as we have observed, the doctrine also may toll a "deadline for filing a TPS application . . . in appropriate circumstances." *Hernandez v. Holder*, 457 F. App'x 487, 492 (6th Cir. 2012). Those circumstances, however, are not present here. Callejas has provided no rationale that would justify tolling the deadline.

## III. CONCLUSION

Because the Board properly denied Callejas's motion to reopen, we **DENY** his petition.