RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SAMIR YOUSIF KADA,

                                   *Petitioner*,

        *v*.

WILLIAM P. BARR, Attorney General,

                                 *Respondent*.

Nos. 18-4038/19-3218

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 043 507 287.

Decided and Filed: January 10, 2020

Before: GRIFFIN, STRANCH, and DONALD, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:** Russell Reid Abrutyn, ABRUTYN LAW PLLC, Berkley, Michigan, for Petitioner. Brendan P. Hogan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

**OPINION**

───────────────

JANE B. STRANCH, Circuit Judge. In this consolidated appeal, Petitioner Samir Kada seeks review of orders from the Board of Immigration Appeals (BIA) denying his motions to reopen. Kada argues that his due process rights were violated due to his attorney's ineffective assistance. In the alternative, he claims that his attorney's serious health problems turned the removal proceedings into a sham, violating his due process rights. For the following reasons, we GRANT Kada's petition for review in Case No. 19-3218 based on his ineffective assistance of

counsel claim. We VACATE the BIA's order denying his second motion to reopen, and REMAND for further proceedings in that case.

## I. BACKGROUND

Kada is a Chaldean Christian from Iraq. He and his family immigrated to the United States when he was twelve as Lawful Permanent Residents. In 2017, Kada was convicted of several crimes, including assault with a deadly weapon and carrying a concealed weapon in violation of Michigan law. The Department of Homeland Security placed him in removal proceedings on March 27, 2018, alleging removability under 8 U.S.C. § 1227(a)(2)(C), based on his firearms convictions under Michigan law.

Attorney Richard Kent initially represented Kada in the removal proceedings. At a hearing on April 17, 2018, Kada informed an immigration judge (IJ) that he would apply for cancellation of removal, withholding of removal, and protection under the Convention Against Torture (CAT). The judge set the following schedule: a May 1 deadline for Kada to submit an administrative brief regarding his claim that his convictions were not disqualifying aggravated felonies or particularly serious crimes, a May 8 deadline to file his application for relief, and a May 15 deadline for the Government to respond.

Kent filed an untimely brief on Kada's behalf on May 3, conceding that Kada's convictions were aggravated felonies disqualifying him from asylum and cancellation of removal but claiming that Kada remained eligible for withholding of removal under the CAT because the convictions were not particularly serious crimes. The brief acknowledged Kada's upcoming deadline to file his applications with the court, noting "Respondent has application for relief in process for Withholding, [and] his next Individual Calendar court date is to address that issue." Kent failed, however, to file Kada's application for relief under the CAT or to request an extension of time by the May 8 filing deadline. After the Government responded to Kada's brief, on May 16, 2018, the IJ issued a written decision determining that Kada was removable as charged, deeming his applications for relief abandoned, and ordering him to be removed to Iraq.

**A.  First Motion to Reopen**

Kent filed a timely motion to reconsider and reopen.  He asserted that his ongoing serious health problems prevented him from meeting the deadlines.  Kent was hospitalized from February 5 through 11 for a serious illness and experienced a "slow relapse," which ultimately resulted in multiple hospitalizations throughout May and into June, specifically May 10–17; 18–22; 27–29; and June 5.  Kent attached his medical records and included Kada's CAT application, evidence, and witness list.

In the application for relief under the CAT attached to the motion to reopen, Kada explained that he had five uncles who "disappeared under Saddam Hussein," and other members of his family "were kidnapped by ISIS and held hostage for money."  He alleged that he is "completely Americanized," knows "little Arabic" and "lack[s] any cultural education as to life in Iraq."  He emphasized his status as a Chaldean Christian, explaining "The US pullout led to ISIS domination of the Chaldean regions of Iraq, and that was followed by their being destroyed by the Shia dominated Popular Mobilization Forces [PMF], who are systematically oppressing Iraqi Christians just as badly as ISIS did."  Kada also submitted country conditions reports regarding the sectarian conflict in Iraq, including evidence that internal relocation is not available in Iraq and should not be used as a basis to deny a stay of removal.  Kada also argued that, if he were not tortured because of his status as a Chaldean Christian, he would be singled out for torture by Iraqi authorities because of his criminal record and status as a deportee from the United States.

The Government opposed Kada's motion to reconsider and reopen, noting that Kent's medical records related to periods in February, before the removal proceedings commenced, and in May, after the missed May 8 deadline.  Kent did not respond with further information about his health problems or additional explanation for the missed deadline.  On June 19, 2018, the IJ denied Kada's motion to reopen based on its finding that Kent had failed to establish his incapacity on or shortly before the May 8 filing deadline.  The court noted that Kent's hospitalization did not occur until "two days <u>after</u> the filing deadline"; "counsel was able to submit a large packet of evidence prior to the application due date"; and counsel failed to explain

"why he was able to file that evidence packet but was unable to timely file respondent's application for relief five days later."

Kent timely appealed to the BIA on Kada's behalf.  The BIA denied the appeal, agreeing with the IJ's conclusion that Kada had abandoned his application under the CAT.  Kada petitioned this court for review on October 24, 2018.

## B.  Second Motion to Reopen

Kada sought new counsel and filed a second motion to reopen before the BIA, which included the argument that Kent provided ineffective assistance of counsel by failing to file Kada's CAT application.  As part of this motion to reopen, Kada submitted documents demonstrating that he complied with the procedural requirements for raising an ineffective assistance of counsel claim.  He also submitted State Department country condition reports, which explained that Christians experience abuse and harassment by PMF members, and that the Iraqi government continues its struggle with the remnants of the Islamic State as well as articles indicating that the Iraqi judicial system often ignores evidence that defendants have been tortured in state custody.  The 2017 State Department Country Report, included in the record, states that the "most significant human rights issues included allegations of unlawful killings by some members of the ISF [Iraqi Security Forces], particularly some elements of the PMF; disappearance and extortion by PMF elements; torture; harsh and life-threatening conditions in detention and prison facilities; arbitrary arrests and detention."  "Impunity effectively existed for government officials and security force personnel, including the Peshmerga and PMF."

Also according to the evidence, armed groups threaten, pressure and harass Christians to force them to observe Islamic customs, and Christians cannot hide their religion or move about the country to a safer location because their national identity cards reference their religion.  "[G]overnment officials, as well as local and international human rights organizations, documented instances of government agents committing torture and other abuses. There were reports police sometimes used abusive methods and coerced confessions for investigations, and courts accepted forced confessions as evidence. . . . As in previous years, there were credible reports that government security forces, to include militia units associated with the PMF, abused

and tortured individuals during arrest, pretrial detention, and after conviction." Kada further provided affidavits from purported experts indicating that Iraqi Christians and Iraqis returning from the United States with criminal records are targeted for abuse and harassment in Iraq.

Before the BIA ruled on Kada's pending motion to reopen, he was removed to Iraq on December 12, 2018. He supplemented his motion to reopen with a written declaration stating that, after he was removed to Iraq, three armed men pointed weapons at him but eventually let him go. Since escaping that kidnapping attempt, Kada has stayed hidden inside where he lacks access to medication. Kada's friend reported the incident to the police, and the men who tried to kidnap Kada were eventually apprehended. They confessed that they were motivated to kidnap Kada to blackmail his family in the United States for ransom money.

On March 6, 2019, the BIA denied Kada's motion to reopen, concluding that, even though Kent had provided incompetent assistance, Kada had not demonstrated that he had been prejudiced by Kent's failure to timely file his CAT application. Kada timely petitioned for review on March 20, 2019, and we consolidated the two petitions for review.

## II. ANALYSIS

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Sako v. Gonzales,* 434 F.3d 857, 863 (6th Cir. 2006). Because Kada had obtained new counsel to file his second motion to reopen, based on an ineffective assistance of counsel claim, we begin our analysis there. Allegations of due process violations in removal proceedings are reviewed *de novo. Camara v. Holder*, 705 F.3d 219, 223 (6th Cir. 2013); *Denko v. I.N.S.*, 351 F.3d 717, 723 (6th Cir. 2003) ("[A]n ineffective assistance of counsel claim [in a deportation proceeding] is reviewed under the Due Process Clause of the Fifth Amendment."). IJs retain "broad discretion in conducting [a removal] hearing," but the Fifth Amendment entitles immigrants facing deportation "to a full and fair hearing." *Lin v. Holder,* 565 F.3d 971, 979 (6th Cir. 2009) (quoting *Castellano–Chacon v. INS,* 341 F.3d 533, 553 (6th Cir.2003)). A due process violation occurs when the proceeding is so fundamentally unfair that the applicant was prevented from reasonably presenting his case. *Hassan v. Gonzales,* 403 F.3d 429, 436 (6th Cir. 2005).

We have consistently followed the Supreme Court's requirement that removal proceedings "meet the essential standards of fairness," including "at a minimum, the due process rights of a noncitizen 'to make his case before the immigration authorities'—and, if he wishes, to 'hire counsel' to do so." *Mendoza-Garcia v. Barr*, 918 F.3d 498, 504 (6th Cir. 2019) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945); *Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018)). "Ineffective assistance of counsel in a deportation proceeding" rises to the level of a due-process violation under the Fifth Amendment if it renders the proceeding "'so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Denko* 351 F.3d at 723 (quoting *Ramirez–Durazo v. INS*, 794 F.2d 491, 499–500 (9th Cir.1986)). The BIA has crafted an administrative remedy for ineffective-assistance claims, *In re Lozada*, 19 I. & N. Dec. 637, 638–39 (B.I.A. 1988), which satisfies the constitutional due process requirements, *Al-Saka*, 904 F.3d at 433; *id* at 434 (White, J., concurring) ("[T]he *Lozada* framework satisfies any arguable constitutional due process requirements pertaining to the effective assistance of immigration counsel.").

*Al-Saka v. Sessions* discussed in dicta the panel's view that "poor lawyering" cannot amount to a "due process violation" in the removal context because there is no "right to government-provided counsel in civil litigation," meaning the Fifth Amendment does not guarantee "the right to effective counsel in removal proceedings." 904 F.3d at 434; *see id.* at 435 (White, J., concurring) (deeming the opinion's discussion of constitutional requirements "unnecessary" (i.e. dicta)). Even if this discussion were not dicta, *Al-Saka* only "stated that there is no independent Fifth Amendment right to counsel *beyond* the administrative remedy for ineffective assistance of counsel outlined by the Justice Department." *Villanueva-Vasquez v. Barr*, 774 F. App'x 269, 275 (6th Cir. 2019). In any case, even if Kada had no viable claim under the Fifth Amendment, his motion to reopen on the basis of ineffective assistance of counsel could still proceed under the administrative framework set forth in *Lozada*. *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 2001) ("The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." (citing *Dokic v. I.N.S.*, 999 F.2d 539 (per curiam) (6th Cir. 1993))).

To succeed on a motion to reopen before the BIA based on the ineffective assistance of counsel, a petitioner must satisfy two conditions. *Sako*, 434 F.3d at 863. First, the petitioner must meet the requirements set forth in *Lozada*. *Lozada* requires the motion to reopen to be supported by an affidavit detailing counsel's failings, proof that counsel was informed of the allegations, and evidence that the petitioner filed disciplinary charges with the appropriate authorities. *See id.* The parties agree that Kada complied with *Lozada*, and that Kent provided ineffective assistance when he failed to timely file Kada's application for deferral of removal, failed to request an extension of the filing deadline, failed to provide the IJ with evidence that his incapacitation prevented him from filing Kada's application, and failed to advise Kada to retain new counsel given his illness.

Second, the petitioner must show he was prejudiced by his attorney's action or inaction. To do so, he must demonstrate a reasonable probability that, but for his counsel's ineffective assistance, he would have been entitled to remain in the United States.[1] *See Sako*, 434 F.3d at 864; *Keith v. Mitchell*, 455 F.3d 662, 677 (6th Cir. 2006) (To prove prejudice in the Sixth Amendment context, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984))). "The prejudice inquiry does not require proving the certainty of entitlement, but focuses instead on whether a petitioner's claims 'could have supported a different outcome.'" *Callejas v. Holder*, 534 F. App'x 386, 389 (6th Cir. 2013) (quoting *Sako*, 434 F.3d at 864); *see also Mendoza-Garcia*, 918 F.3d at 508 n. 2 (describing *Sako's* prejudice standard as a "permissive formulation"); *Camara*, 705 F.3d at 223 ("Substantial

---

[1]An earlier published panel decision, *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696 (6th Cir. 2001), described a test for prejudice requiring a petitioner to establish that "but for" her counsel's legal advice, she "would have been entitled to continue residing in the United States." 237 F.3d at 699–700. That exacting prejudice standard, which requires certainty, was announced in dicta, however, and does not bind us. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 n.8 (6th Cir. 2016) (defining dicta as a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." (quoting Obiter Dictum, Black's Law Dictionary (10th ed.2014))); *United States v. Burroughs*, 5 F.3d 192, 194 (6th Cir. 1993) ("[O]ne panel of this court is not bound by dicta in a previously published panel opinion." (citation omitted)). Specifically, because the petitioners in *Huicochea-Gomez* "conceded their removability," their counsel's ineffectiveness was immaterial to their lack of an entitlement to stay in the United States. 237 F.3d at 700. They could show neither a reasonable probability nor a certainty that they would have been entitled to remain in the United States absent their attorney's ineffective assistance. The certainty prejudice standard was not necessary to the outcome in *Huicochea-Gomez* and was therefore non-binding dicta.

prejudice is shown if 'the alleged violation affected the outcome of the proceeding.'" (quoting *Lin*, 565 F.3d at 979)).

Several of our sister circuits have adopted the reasonable probability approach, an equivalent approach, or a less exacting approach for determining prejudice. *See, e.g.*, *Hernandez v. Reno*, 238 F.3d 50, 56 (1st Cir. 2001); *United States v. Charleswell*, 456 F.3d 347, 361 n.16 (3d Cir. 2006); *Obleshchenko v. Ashcroft*, 392 F.3d 970, 972 (8th Cir. 2004); *Ortiz v. I.N.S.*, 179 F.3d 1148, 1153 (9th Cir. 1999); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208–09 (10th Cir. 2004) (en banc); *Dakane v. U.S. Atty. Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005).

Having stated the correct reasonable probability framework, we turn to the BIA's approach to Kent's ineffective assistance of counsel claim. In concluding that Kada had not been prejudiced by Kent's conduct, the BIA emphasized evidence submitted by Kada after his removal to Iraq. For example, the BIA rejected Kada's argument that reopening was warranted based on prior decisions in similar BIA cases because those decisions addressed "the question of the possibility of detention and mistreatment by the Iraqi government immediately upon arrival," and Kada's post-removal evidence showed that he was not detained and mistreated by the Iraqi government immediately upon arrival. By evaluating Kada's post-removal evidence in this way, the BIA applied a rule that required Kada to prove he *necessarily* would have prevailed had his attorney timely filed his application for protection under the CAT. That rule conflicts with the permissive prejudice formulation outlined in *Sako* and its progeny. "'Prejudice' inquires, *ex post,* whether due process was violated by evaluating whether the alien's claims could have supported a different outcome." *Sako*, 434 F.3d at 864.

The BIA failed to account for record evidence and prior decisions, involving nearly identical factual circumstances; and it did not analyze whether Kada showed a reasonable probability that, but for the ineffective assistance of his counsel, he would have been entitled to remain in the United States. *Sako*, 434 F.3d at 864. Kada presented the BIA with earlier, albeit unpublished decisions, involving applicants who alleged that they would face torture and persecution based on the same circumstances Kada faces: they are Chaldean Christians; they are Americanized because they have resided in the United States for a significant amount of time; they have convictions for serious crimes; and they will be subject to scrutiny because of the

notoriety of the planned mass removal of Iraqis from the United States. In those cases, the IJ had found the applicants ineligible for relief under the CAT, but the BIA remanded for further factual development. The BIA sought to distinguish these cases from Kada's because of their procedural posture—the cases stopped short of making determinations about the merits of the applicants' claims. That distinction is not meaningful, however, when asking the properly framed question of whether Kada's evidence demonstrated a reasonable probability that, but for his counsel's ineffective assistance, he would have been entitled to remain in the United States. Implicit in these BIA remand decisions is the idea that experts testifying to the very evidence that Kada seeks to introduce *could* lead the IJ to grant an applicant's petition for relief under the CAT.

For example, in one of the cited cases, the BIA instructed the IJ to "reconsider her finding as to the likelihood of torture in light of all the expert testimony and the facts previously found: *i.e.*, that the respondent is a Chaldean Christian who has been in the United States for over 4 decades, speaks limited Arabic, and has a criminal history." Although the BIA expressed "no opinion about the proper outcome of these proceedings," it noted that "[l]ike the IJ, we consider this to be a close case," and it remanded "to ensure all necessary facts are found for review." If the facts underlying that case—essentially the same facts alleged by Kada—would inevitably have resulted in a denial of relief regardless of whether they were testified to by experts or lay witnesses, remand would have been unnecessary.

Kada also cites to a decision where the agency remanded for ineffective assistance of counsel based on a finding that the applicant, a Chaldean Christian with ties to the United States and a criminal record who faced deportation to Iraq, had been prejudiced by counsel's conduct. In that case, the BIA reasoned that remand was appropriate because the applicant had offered extensive country conditions evidence as well as statements from purported experts in support of his motion. The same is true in this case. The BIA, however, failed to explain its conclusion that Kada had not met his burden to show prejudice given the agency's prior, opposite conclusion for a similarly situated applicant. By failing to adequately distinguish Kada's case from that of a similarly situated Chaldean Christian facing removal to Iraq, the BIA violated its own policies. *Kiegemwe v. Holder*, 427 F. App'x 473, 482 (6th Cir. 2011) (explaining that the

BIA violates fundamental legal principles and its own policies when it treats similarly-situated individuals differently without satisfactory explanation).

The BIA's determination that Kada failed to meet "the heavy burden of demonstrating that it is more likely than not that he would be tortured by [the PMF], or that he cannot live in an area not controlled by PMF" because he had demonstrated only that the PMF harasses and restricts the movement of Christians is also contrary to the record and BIA precedent. Kada presented the 2017 State Department Country Report, which concluded that the "most significant human rights issues" in Iraq "included allegations of unlawful killings by some members of the ISF [Iraqi Security Forces], particularly some elements of the PMF; disappearance and extortion by PMF elements; torture; harsh and life-threatening conditions in detention and prison facilities; arbitrary arrests and detention." The report explained that "[i]mpunity effectively existed for government officials and security force personnel, including the Peshmerga and PMF." The evidence showed, moreover, that armed groups threaten, pressure and harass Christians to force them to observe Islamic customs, and Christians cannot hide their religion or move about the country to a safer location because their national identity cards reference their religion. "[G]overnment agents" commit "torture and other abuses," using "abusive methods and coerced confessions for investigations, and" abusing and torturing "individuals during arrest, pretrial detention, and after conviction." Kada included evidence in the record that he is not only likely to be tortured because of his status as an Iraqi Christian, but also because his criminal record and Americanized behavior will be make him a target.

In one of the prior decisions cited by Kada, the applicant presented the 2017 International Religious Freedom Report for Iraq, which indicated "that Shia and Kurdish militias increasingly are harassing and abusing Christians throughout the Ninewa Plain, which is where the majority of Christians in Iraq live." The BIA concluded that this evidence was sufficient to "undercut[] the Immigration Judge's finding that returnees are only detained by the paramilitaries if they have ties to ISIS," and remanded for further proceedings. There, unlike here, the BIA did not

take issue with the fact that the applicant had demonstrated only that PMF officials harassed and abused Christians without providing specific evidence that this harassment amounted to torture.[2]

Taken together, the BIA applied an incorrect standard. It required that Kada prove prejudice by showing that his claims necessarily would have succeeded or that he has actually been tortured rather than asking whether he demonstrated a reasonable probability that, but for his counsel's ineffective assistance, he would have been entitled to remain in the United States. And it failed to treat Kada as it has similarly-situated individuals. As a result, the Board abused its discretion by denying Kada's motion to reopen. Finding remand appropriate based on Kada's ineffective assistance of counsel claim, we need not resolve Kada's petition for review in Case No. 18-4038.

### III. CONCLUSION

For the foregoing reasons, we GRANT the petition for review in Case No. 19-3218 based on Kada's ineffective assistance of counsel claim; we VACATE the BIA's order denying Kada's second motion to reopen, and REMAND for further proceedings; and we DISMISS the petition for review in Case No. 18-4038 as moot. We also DENY Kada's motion to hold the case in abeyance as moot.

---

[2]Kada also relies on *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015), to argue that his status "as a Christian alone entitle[d] him to withholding of removal, given that there is 'a clear probability' that he would be subject to future persecution if returned to contemporary Iraq." In *Yousif*, the Government conceded that the applicant was likely to be subject to future persecution because of his Christianity, but the court's inquiry focused instead on whether the applicant was barred from asylum because he had deliberately made misrepresentations about his past experiences. *Id.* at 627–28. The Government has not made that same concession here.