*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DJELIKA CAMARA and FOUSSEYNI KALLE,
                                    *Petitioners*,

          *v.*                                              No. 11-4043

ERIC H. HOLDER, JR., Attorney General,
                                    *Respondent*.

Petition for Review of an Order of the Board of Immigration Appeals.
Nos. A093 433 501; A099 345 044.

Decided and Filed: January 15, 2013

Before: BATCHELDER, Chief Judge; KEITH and MARTIN Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Mitchell W. Allen, ALLEN LAW FIRM, LLC, Mason, Ohio, for Petitioners. Puneet Cheema, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

DAMON J. KEITH, Circuit Judge. This appeal arises out of an order by the Board of Immigration Appeals ("BIA" or "Board") that upheld an immigration judge's ("IJ") ruling denying Mr. Fousseyni Kalle asylum and withholding of removal. Kalle sought relief derivatively through his wife, Mrs. Djelika Camara. Although her asylum application was statutorily barred, she was granted withholding of removal. The IJ, and subsequently the Board, found Kalle removable because: (1) Camara's lead asylum application was denied, (2) Kalle never applied for relief on an individual basis, and (3) withholding of removal is not available derivatively. On appeal, Kalle and Camara (collectively, "Petitioners") assert two principal arguments: (1) Kalle was denied due

1

process when the Board failed to consider evidence of his intent to apply for individual withholding of removal and (2) withholding of removal ought to be available derivatively. Although we are sympathetic to the Petitioners' circumstances, we **DENY** the petition to review the Board's ruling for the following reasons.

## BACKGROUND

**Initiation of Removal Proceedings**

Petitioners are citizens of Mali who remained in the United States longer than authorized under their visitors' visas. On February 14, 2006, Camara submitted an application for asylum and withholding of removal based on past persecution she suffered in the form of female genital mutilation ("FGM"); she listed her husband as a derivative applicant.

On May 12, 2006, the Petitioners were issued Notices to Appear ("NTA"), charging them with removability under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted. At a June 2006 hearing, with the help of counsel, Petitioners conceded removability as charged and indicated that they sought asylum, withholding of removal, protection under the Convention Against Torture ("CAT"),[1] and, in the alternative, voluntary departure. Through counsel the Petitioners indicated that Camara was the lead applicant for the couple's claims for relief.

**The Immigration Judge and Board's First Decisions**

Camara testified that she was subjected to FGM when she was a one-year-old child, and has continued to suffer chronic medical problems due to the FGM. She testified that she was unable to submit her asylum application by the one-year filing deadline after her entry into the United States because she and her husband had

---

[1] United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85; 8 C.F.R. § 1208.16.

experienced medical problems.**2**   Kalle testified before the IJ regarding his marriage to Camara and their respective illnesses prior to Camara's filing for asylum and withholding of removal.

On January 31, 2007, the IJ denied Petitioners' applications for relief.  The IJ found that Camara's FGM constituted past persecution; however, he found that even if Camara's illness was an "extraordinary circumstance" sufficient to excuse the one-year filing deadline for her asylum application, Camara had failed to show she filed within a reasonable period.  The IJ also denied the application for withholding of removal and for CAT protection.

Petitioners appealed the IJ's decision to the Board.  The brief did not indicate that Kalle had personally experienced past persecution or had a fear of future persecution. On appeal, the Board remanded the record to the IJ due to "significant developments in the caselaw for considering FGM claims."  AR 147–48.

**Agency Proceedings on Remand from the Board**

*The Immigration Judge's Second Decision*

Remand proceedings were held telephonically on February 3, 2010.  The IJ specifically asked whether Petitioners "envisioned there would be any [additional] testimony needed" regarding their claims.  AR 90.  Petitioners, through counsel and an interpreter, indicated that no further testimony was necessary and that the parties could make their arguments in written briefs.  Once again Petitioners' counsel indicated that Camara was the lead respondent, and the submitted brief did not claim that Kalle had experienced past persecution or had a fear of future persecution.

On August 6, 2010, the IJ found that Camara's application for asylum was statutorily barred by the one-year time bar, granted Camara's application for withholding of removal, and denied her request for CAT protection as moot.  The IJ noted that

---

**2**An application for asylum must be filed within one year of arriving in the United States.  *See* 8 U.S.C. § 1158(a)(2)(B).  The one-year time bar may be excused if the applicant "demonstrates to the satisfaction of the Attorney General . . . extraordinary circumstances relating to the delay in filing an application within [the one-year period]."  8 U.S.C. § 1158(a)(2)(D).

Kalle's only claim for relief was as a derivative applicant for asylum. Because Camara's asylum claim was denied, so was Kalle's derivative asylum claim. Finding that withholding of removal was not available derivatively, the IJ then ordered Kalle removed to Mali.

*The Petitioners' Second Appeal to the Board*

Represented by new counsel, Petitioners appealed, arguing that the "IJ erred in failing to consider Mr. Kalle's own independent claims for withholding of removal based on the risk of FGM to his wife." AR 7, 37–39. They asserted that "[n]o evidence was taken at all on what repercussions might befall a male Malian who opposed the widespread cultural practice of FGM. No evidence was taken showing what laws might be in place to protect this [sic] the practice of FGM from interference by male members of the society." AR 39. Petitioners also claimed that the "IJ erred in . . . finding that Mr. Kalle had not 'submitted any other applications for relief,'" and argued that he had "independently requested the relief of withholding of removal" in their initial proceedings. *Id*. However, Petitioners conceded: (1) that only one application for asylum and withholding of removal was filed in their case, (2) that Camara was the primary applicant, and (3) that Kalle was the derivative applicant.

On August 31, 2011, the Board affirmed the IJ, reasoning that Kalle "did not file his own independent application for asylum and withholding of removal at any point." The Board also decided that Kalle was "precluded from raising this claim now." AR 4. Alternatively, the Board found that Kalle had not provided sufficient evidence suggesting eligibility for withholding.

Petitioners argue that the Board and the IJ violated Kalle's due process rights, that withholding should be available derivatively, and that Kalle is eligible for withholding on an individual basis. We address each of these claims in turn.

## STANDARD OF REVIEW

We review the actual order of the Board, but we may also review the underlying decision when, as is the case here, the Board expressly "adopts and affirms the IJ's decision but adds comments of its own." *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007). Factual findings are upheld so long as the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004) (quoting *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 388 (6th Cir. 1998)). A Board decision regarding withholding of removal is upheld unless it is manifestly contrary to law. *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006).

## ANALYSIS

### I.     Due Process Claims

Petitioners assert that the Board and the IJ erred by: (1) ignoring Kalle's intent to submit an individual application, (2) failing to advise Kalle to file an independent application for relief, and (3) failing to extend the deadline for Kalle to submit an independent application. To the extent these claims assert a violation of due process, Petitioners' arguments are unavailing.

Allegations of due process violations in removal proceedings are reviewed *de novo*. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). Although IJs retain "broad discretion in conducting [a removal] hearing," the Fifth Amendment entitles immigrants facing deportation "to a full and fair hearing." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009). A due process violation occurs only when the proceeding was so fundamentally unfair that the applicant was prevented from reasonably presenting his case. *Hassan*, 403 F.3d at 436. The applicant must show "not only error, but also substantial prejudice." *Lin*, 565 F.3d at 979 (internal quotation marks omitted). Substantial prejudice is shown if "the alleged violation affected the outcome of the proceeding." *Id*.

We are not convinced that the BIA unfairly ignored the Petitioners' purported attempts to either raise an individual claim on behalf of Kalle or submit evidence that he was independently eligible for relief. Kalle was listed as a derivative applicant on Camara's asylum application. At both hearings with the IJ, Petitioners' counsel indicated that Camara was the lead applicant. On remand, Petitioners' counsel declined to offer any additional testimony when the IJ asked if any was needed. Petitioners' briefs never indicated that Kalle himself experienced past persecution or had a fear of future persecution on account of a protected ground until their second Board appeal. Petitioners point to a verbal statement by their counsel in the plural "we" that was made in response to the IJ's question regarding what relief the Petitioners were seeking. They also concede, however, that this is insufficient to constitute a request for relief. Pet'r Br. at 24. In light of these undisputed facts, we cannot say that the IJ and the Board's findings were so fundamentally unfair as to constitute error.

Petitioners also argue that "[o]nce the Court decided that Ms. Camara's application for asylum was not timely, the Court should have either treated Mr. Kalle's request for withholding of removal independently or required Mr. Kalle to submit his own application for asylum and withholding of removal." Pet'r Br. at 22. Petitioners do not advance any support for the claim that the IJ had the duty to make them aware of any application requirements when they were represented by counsel. Therefore, we cannot say the IJ's failure to advise Kalle to submit his own application was so fundamentally unfair that it amounted to constitutional error.

Petitioners further claim that the IJ should have extended the deadline for Kalle to submit his own application "when it was clear that Ms. Camara's asylum claim would fail." Pet'r Br. at 24. Under 8 C.F.R. § 1003.31(c), an IJ has the discretion to set deadlines for submitting relevant documents. Yet the problem is not that the IJ refused to extend the deadline for Kalle to submit an application, but that the Petitioners failed to ever file one on his behalf. Given that Kalle's individual claim was "raised for the first time . . . on appeal to the Board a second time," it was not so fundamentally unfair

as to constitute error for the IJ to decline to extend the deadline for Kalle to submit an individual application.

In addition to failing to demonstrate error on the part of the IJ or the Board, Petitioners also fail to illuminate how the Board and the IJ's actions effected substantial prejudice. Therefore, we cannot say that Kalle suffered a violation of due process.

## II.     Derivative Withholding of Removal

Petitioners challenge the Board's finding that withholding is unavailable derivatively and urge us to provide such status. Legal and constitutional questions are subject to *de novo* review, with deference given to the Board's reasonable interpretation of statutes and regulations. *Lin*, 565 F.3d at 976.

According to Board interpretation, the INA does not provide for derivative withholding of removal. *See In re A-K*, 24 I. & N. Dec. 275, 279 (BIA 2007), ("[W]hile the [INA] provides for derivative asylum in certain circumstances, the Act does not permit derivative withholding of removal under any circumstances.").[3] Petitioners do not argue that this interpretation of the statute is unreasonable. Therefore, the panel declines to reach the reasonableness of the Board's interpretation.

## III.    Eligibility for Withholding of Removal

Petitioners also argue that Kalle is eligible for withholding of removal as the husband of a victim of FGM. The foregoing reasons all but resolve this case. Nevertheless, we will address this argument in order to provide Petitioners with an individualized response to their claims. Withholding of removal provides that the Attorney General may not deport any applicant whose "life or freedom would be threatened" in their native country due to "race, religion, nationality, membership in a

---

[3]Petitioners rely on *Sarhan v. Holder*, 658 F.3d 649 (7th Cir. 2011). In *Sarhan*, the Seventh Circuit refrained from dismissing derivative withholding claims because it saw "no reason to read into the [INA's] silence a hidden rule that bars derivative claims in all instances where an alien seeks withholding of removal." *Id*. at 661. However, the IJ and the BIA had not denied relief on that ground and the case was remanded for a number of reasons, including the possibility that the potential derivative withholding applicant was eligible for withholding individually. *Id*.

particular social group, or political opinion."   8 U.S.C. § 1231(b)(3)(A); *Vasha v. Gonzales*, 410 F.3d 863, 875 (6th Cir. 2005).   The applicant must show "a clear probability" that he or she would be subject to persecution if returned to the country in question. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006).  A Board decision regarding withholding of removal is upheld unless it is manifestly contrary to law. *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006).  Because Petitioners fail to articulate on which ground Kalle seeks protection, we cannot say that the Board's denial of withholding was manifestly contrary to law. *See Harchenko v. I.N.S.*, 379 F.3d 405, 410 (6th Cir. 2004) ("[F]eared persecution must relate to [an applicant] individually, not to the population generally.") (internal citation and quotation omitted).

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review of the Board's ruling.