NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0461n.06

No. 12-4196

**FILED**
*May 09, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

XIAOFEN LIU-CHEN,                )

       Petitioner,           )

v.                             )

                               )   ON PETITION FOR REVIEW

ERIC H. HOLDER, JR. Attorney General   )   FROM AN ORDER OF THE

                               )   BOARD OF IMMIGRATION

       Respondent.         )   APPEALS

Before: ROGERS and KETHLEDGE, Circuit Judges; and BORMAN, District Judge.[*]

KETHLEDGE, Circuit Judge. Xiaofen Liu-Chen petitions for review of an order of the Board of Immigration Appeals denying her applications for asylum, withholding of removal, and protection under the United Nations' Convention Against Torture. We deny the petition.

I.

Liu-Chen, a native and citizen of China, entered the United States using a fake passport and visa in December 1997. In February 2007, the Department of Homeland Security issued her a Notice to Appear, charging her with being removable under 8 U.S.C. § 1227(a)(1)(A). Liu-Chen conceded

---

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

removability, but applied for asylum, withholding of removal, and protection under the United Nations' Convention Against Torture.

An immigration judge (IJ) held a hearing on the merits of Liu-Chen's application. At that hearing, Liu-Chen testified to the following facts. Liu-Chen was born on October 30, 1979 in Wenzhou City, China. She was her mother's second child. Shortly thereafter, China adopted a policy that made it illegal to have more than one child. Thus, when Liu-Chen's mother became pregnant with her third child in February 1981, she took Liu-Chen and went into hiding. Liu-Chen and her mother spent the next several months living in an outdoor utility shed. They remained there until Liu-Chen's mother gave birth.

In June 1983, Liu-Chen's mother became pregnant with her fourth child. Chinese authorities discovered the pregnancy, however, and forced Liu-Chen's mother to have an abortion. In September 1983, Liu-Chen's mother became pregnant with her fifth child. Liu-Chen and her mother again went into hiding until she gave birth. When they returned home in 1984, they discovered that Chinese authorities had searched their house, breaking glass and destroying furniture in the process. Liu-Chen and her mother went into hiding a third time in March 1985, when Liu-Chen's mother became pregnant with her sixth child. After Liu-Chen's mother gave birth, they returned home. When they did so, Chinese authorities arrested Liu-Chen's mother and forcibly sterilized her.

Liu-Chen also testified that she and her husband planned to have three children. Thus, if she was removed to China, she feared that she would also be forcibly sterilized.

After the hearing, the IJ denied Lui-Chen's application. The IJ found that Liu-Chen's fear of persecution for violating China's one-child policy was based "upon highly speculative future

events[,]" given that she and her husband had tried to have children for almost nine years without success. The IJ therefore held that Liu-Chen had failed to establish a clear probability of persecution upon return to China.

The Board of Immigration Appeals affirmed the IJ's findings. The Board also rejected Liu-Chen's argument (made for the first time on appeal) that she had suffered past persecution when she went into hiding with her mother. The Board held that, although "it must have been difficult for [Liu-Chen] to witness the harm suffered by her mother," those events did not "give[] rise to a claim of past persecution[.]" The Board added that Liu-Chen "ha[d] not demonstrated that she personally suffered any physical or psychological harm or mistreatment by Chinese family officials in the past."

This petition for review followed.

II.

Where, as here, the Board issues its own opinion, we review that opinion as the final agency determination. *Dieng v. Holder*, 698 F.3d 866, 871 (6th Cir. 2012). We review questions of law de novo and factual findings for substantial evidence, reversing only if the evidence compels a contrary conclusion. *See id.*

The Board found that Liu-Chen's asylum application was untimely, *see* 8 U.S.C. § 1158(a)(2)(B), and that Liu-Chen had not shown "changed circumstances" or "extraordinary circumstances relating to the delay in filing an application" to excuse the late filing, *see id.* § 1158(a)(2)(D). Liu-Chen does not challenge this determination on appeal.

To prevail on her withholding claim, Liu-Chen must demonstrate a "clear probability" that she would suffer persecution in China on the basis that she violated the one-child policy. *See* 8

U.S.C. § 1231(b)(3); *Camara v. Holder*, 705 F.3d 219, 225 (6th Cir. 2013). She can carry this burden in two ways: by proving past persecution, which creates a rebuttable presumption of future persecution, or by proving "that it is more likely than not" that she will suffer persecution upon return to China. 8 C.F.R. § 1208.16(b).

Liu-Chen first argues that she suffered past persecution when Chinese authorities attempted to enforce the one-child policy against her mother. This experience "uprooted [Liu-Chen] from her home and community[,]" and "forced [her] into hiding and recluse for long periods of time, often in woefully unsafe conditions, only to return to find her home destroyed." Thus, Liu-Chen says, she is entitled to a rebuttable presumption of future persecution. But it was Liu-Chen's mother who suffered persecution when China enforced its one-child policy, not Liu-Chen. Persecution is defined as "the infliction of harm or suffering by the government . . . to overcome *a characteristic of the victim*." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (emphasis added). And here, there is no evidence that China inflicted any harm or suffering on Liu-Chen because of any characteristic that she possessed. Liu-Chen has never violated (or been perceived as violating) China's one-child policy; thus, China cannot persecute her for doing so.

Moreover, there is no evidence that China meant to punish Liu-Chen because her mother violated the one-child policy. To the contrary, after her mother was sterilized, Liu-Chen lived in China for 12 years without incident. Thus, Liu-Chen did not suffer persecution when China enforced its one-child policy against her mother. *See Jiang v. Gonzales*, 500 F.3d 137, 142 (2d Cir. 2007).

Liu-Chen also argues that she is more likely than not to suffer persecution upon return to China because she plans to have three children. But the evidence does not compel a finding that

-4-

Liu-Chen will suffer future persecution. Liu-Chen currently has no children, even though she and her husband have been trying to have a child for nine years. And Liu-Chen's husband testified that, if she is removed to China, he does not plan on joining her. Taken together, these facts make it unlikely that Liu-Chen will have more than one child upon return to China.

Liu-Chen has failed to prove either past persecution or a likelihood of future persecution. Thus, she is not entitled to withholding of removal.

Finally, the Board found that Liu-Chen had not established that she would likely be tortured by, or with the acquiescence of, the Chinese government. Liu-Chen raises no substantive argument challenging that determination. Her claim for protection under the United Nations' Convention Against Torture is therefore waived. *See Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008).

The petition for review is denied.