NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0216n.06
No. 20-3805

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JUAN SEBASTIAN-GASPAR, | ) | **FILED**<br>Apr 22, 2021<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW |
| MERRICK B. GARLAND, Attorney General, | ) | FROM THE BOARD OF |
| Respondent. | ) | IMMIGRATION APPEALS |
| | ) | |
| | ) | |

Before: KETHLEDGE, STRANCH, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge. Juan Sebastian-Gaspar applied for asylum, withholding of removal, and protection under the Convention Against Torture. At his removal hearing, Sebastian-Gaspar testified that he had fled Guatemala to escape gang violence, and that a gang would kill him if he returned. The immigration judge denied his applications for relief, and the Board of Immigration Appeals affirmed. We deny his petition for review of that decision.

I.

In 2014, Sebastian-Gaspar lived in rural Guatemala with his sister and cousin. That year, when Sebastian-Gaspar was 15 years old, members of the Mara-18 gang tried to recruit and to extort money from him.

When the gang members first approached Sebastian-Gaspar, they said that he could join them in smoking, drinking beer, and robbing homes. But Sebastian-Gaspar refused, explaining

later that he believed in God and "didn't want to do those bad things." As a result, the gang members beat him, mocked his religious beliefs, and called him "stupid," "gay," and a "wuss."

Around two months later, gang members returned and threatened to kill Sebastian-Gaspar or to rape his sister if he did not join their gang. Again he refused, and again the gang members beat him. They also demanded 3,000 quetzales—about 100 days' salary—which Sebastian-Gaspar could not pay.

Another five months later, the gang members approached Sebastian-Gaspar again. First they tried to persuade him to join with promises that the gang would help him. But again Sebastian-Gaspar refused, and again the gang members beat him and mocked his religious beliefs. They also threatened that, if Sebastian-Gaspar continued to resist, they would burn down his home and rape his sister. And again they demanded 3,000 quetzales and threatened to kill Sebastian-Gaspar if he failed to pay.

Sebastian-Gaspar did not report any of these beatings or threats to the Guatemalan police, whose nearest station was several miles away. Instead, after the third encounter, Sebastian-Gaspar and his sister began walking to the U.S.-Mexico border, where in May 2015 U.S. agents apprehended them. The Department of Homeland Security soon charged that Sebastian-Gaspar was "present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). He was later released pending removal proceedings.

Sebastian-Gaspar thereafter conceded his removability, but applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An immigration judge held a removal hearing, where Sebastian-Gaspar testified to the events recited above and asserted that the gang had targeted him due to his membership in a particular social group. Specifically, Sebastian-Gaspar said that he belonged to a group of "religious, unprotected,

displaced Guatemalan men between 15 and 25 who are morally opposed to gang activity and violence and have refused to join a gang." The IJ found that Sebastian-Gaspar's testimony was credible so far as it went, but that it was general and vague as to the particulars of his encounters with the gang members and about his injuries, which were apparently slight. The IJ also noted that Sebastian-Gaspar had not corroborated his testimony with letters from his sister, parents, cousin, or Guatemalan neighbors.

Separately, the IJ found that Sebastian-Gaspar's past encounters with the gang members had not risen to the level of persecution; that he had not been targeted because of his membership in any "particular social group"; and that Sebastian-Gaspar had not shown that the government was unwilling or unable to protect him. The IJ therefore denied relief and entered an order of removal. The Board adopted the IJ's opinion and affirmed. This petition followed.

## II.

Where, as here, the Board adopts and supplements the IJ's decision, we review the opinions of both the IJ and the Board. *See Hanna v. Holder*, 740 F.3d 379, 386 (6th Cir. 2014). In doing so, we review their legal conclusions de novo and their factual findings for substantial evidence. *See Morales Bribiesca v. Barr*, 979 F.3d 508, 512 (6th Cir. 2020). Under the substantial-evidence standard, we uphold those findings unless "any reasonable adjudicator would be compelled" to reject them. 8 U.S.C. § 1252(b)(4)(B); *Berhane v. Holder*, 606 F.3d 819, 823 (6th Cir. 2010).

Sebastian-Gaspar challenges the IJ's denial of his applications for asylum, withholding, and CAT protection. For each form of relief, Sebastian-Gaspar bore the burden of proving his eligibility. *See Bi Qinq Zheng v. Lynch*, 819 F.3d 287, 294–95 (6th Cir. 2016).

To qualify for asylum, Sebastian-Gaspar must show that he "suffered actual past persecution" or has "a well-founded fear of future persecution." *Pilica v. Ashcroft*, 388 F.3d 941,

950 (6th Cir. 2004). Sebastian-Gaspar's fear of future persecution is well-founded if it is both "subjectively genuine" and "objectively reasonable." *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011) (internal quotation marks omitted).

Persecution, both past and future, involves "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010). Here, Sebastian-Gaspar asserts that he has been harmed and will be harmed by gang members, not the government. He therefore must show that he could not in the past, and cannot in the future, "reasonably expect" the government's assistance in controlling the gangs. *Juan Antonio v. Barr*, 959 F.3d 778, 793 (6th Cir. 2020).

With respect to that showing, the only evidence that Sebastian-Gaspar cites about his own circumstances is that the nearest police station was several miles away. But Sebastian-Gaspar did not testify that he could not reach the station, either by walking or by catching a ride. And nothing in Sebastian-Gaspar's testimony—apart from his conclusory assertions that the police were corrupt and hostile to indigenous persons like himself—shows that, had he gone to the station, the police would have refused to help him.

Sebastian-Gaspar also submitted to the IJ two reports and several articles about general conditions in Guatemala. The reports show that Guatemala has launched a campaign against gang violence, established anti-gang groups within its police force, and set up special courts to adjudicate certain gang cases. Although one report suggests that police have failed to control the gangs in some parts of Guatemala, Sebastian-Gaspar never testified that the police had lost control over gang violence in his area. Indeed, he did not testify about any specific instance of gang violence against anyone else there.

The reports also do not compel us to reject the IJ's conclusions as to Sebastian-Gaspar's assertions of police corruption and hostility. *See Morales Bribiesca*, 979 F.3d at 512. Although the reports demonstrate that Guatemala continues to struggle with police corruption, they also note progress in eliminating corruption from the police force. Taken as a whole, they do not depict a police department that is so rife with corruption that Sebastian-Gaspar could not turn to it for help. A reasonable adjudicator could therefore conclude that Sebastian-Gaspar had failed to meet his burden to demonstrate that the Guatemalan government was unwilling or unable to help him. Thus, his asylum claim fails. *See K. H. v. Barr*, 920 F.3d 470, 478 (6th Cir. 2019).

Sebastian-Gaspar's failure to show that the government would not protect him from gang violence means that he failed to establish his eligibility for withholding as well. *See Wang v. Lynch*, 824 F.3d 587, 593 (6th Cir. 2016). Similarly, to qualify for CAT protection, Sebastian-Gaspar must show that the gang members would "more likely than not" harm him "at the instigation of or with the consent or acquiescence of a public official." *Bonilla-Morales*, 607 F.3d at 1139. For the reasons stated above, a reasonable adjudicator could conclude that the government would not acquiesce in or consent to gang violence against Sebastian-Gaspar. Hence his claim for CAT protection also fails.

Finally, Sebastian-Gaspar argues that the IJ and the Board violated his right to due process during his removal proceeding. To prevail on this claim, he must show that their alleged actions made his removal proceeding "fundamentally unfair" and "affected the outcome of the proceeding." *Camara v. Holder*, 705 F.3d 219, 223 (6th Cir. 2013). Specifically, Sebastian-Gaspar asserts that the IJ and the Board failed to consider all the evidence that he presented. But he cites nothing—other than his proceeding's outcome—to show that they overlooked his testimony and supporting documents. Indeed, the IJ spent five pages detailing

Sebastian-Gaspar's testimony and explicitly considered the contents of the country reports. Hence his due-process claim fails.

\* \* \*

Sebastian-Gaspar's petition is denied.