RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

CARLOS ALFONSO GARCIA-DELEON,

                     *Petitioner*,

    *v.*

                     No. 20-3957

MERRICK B. GARLAND, Attorney General,

                     *Respondent*.

─────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 200 191 952.

Decided and Filed:  June 4, 2021

Before:  MOORE, CLAY, and STRANCH, Circuit Judges.

─────────────

#### COUNSEL

─────────────

**ON BRIEF:**  David E. Funke, DAVID FUNKE IMMIGRATION LAW GROUP, Louisville, Kentucky, for Petitioner.  Yanal H. Yousef, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  Cynthia M. Nunez, WALKER & ASSOCIATES OF MICHIGAN, P.C., Detroit, Michigan, for Amicus Curiae American Immigration Lawyers Association.

─────────────

#### OPINION

─────────────

Carlos Alfonso Garcia-DeLeon petitions this court for review of the decision of the Board of Immigration Appeals ("BIA") denying his motion for administrative closure.  For the following reasons, we **GRANT** the petition for review, **VACATE** the BIA's order, and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

Carlos Alfonso Garcia-DeLeon ("Garcia") is a native and citizen of Mexico who entered the United States without inspection in October 2000.  Administrative Record ("A.R.") at 285 (Appl. for Cancellation of Removal at 2).  On July 7, 2011, the Department of Homeland Security ("DHS") served Garcia with a Notice to Appear and placed him in removal proceedings.  *Id.* at 338–39 (Notice to Appear).

At a hearing on July 2, 2012, Garcia's counsel admitted the factual allegations in the notice to appear and conceded that Garcia was removable.  *Id.* at 95 (07/02/12 Hr'g Tr. at 2).  At that hearing, Garcia also declared his intention to apply for Cancellation of Removal, a form of discretionary relief available to noncitizens who have been present in the United States for at least ten years, who have demonstrated good moral character, who have not been convicted of certain offenses, and whose departure would cause exceptional and extremely unusual hardship to their U.S. citizen relatives, 8 U.S.C. § 1229b(b)(1).  *Id.* at 96 (07/02/12 Hr'g Tr. at 3).  He requested voluntary departure in the alternative.  *Id.*  Garcia submitted his application for Cancellation of Removal in July 2013.  *Id.* at 284–92 (Appl. for Cancellation of Removal).  On August 8, 2018, while his removal proceedings were pending, Garcia married a U.S. citizen, *id.* at 235 (Certificate of Marriage), who filed an I-130 Petition for Alien Relative on Garcia's behalf, *id.* at 216–33 (Pet. for Alien Relative).

At the merits hearing before the immigration judge ("IJ"), Garcia requested a continuance pending adjudication of his I-130 petition.  *Id.* at 117 (08/13/18 Hr'g Tr. at 20).  The IJ denied the motion for a continuance because Garcia's immigration case had been pending for seven years and should be resolved promptly.  *Id.* at 117–18 (08/13/18 Hr'g Tr. at 20–21).  Further, the IJ noted that even if U.S. Citizenship and Immigration Services ("USCIS") approved his I-130 petition, Garcia would have to leave the United States and be processed at the American consulate in Mexico to get a green card.  *Id.* at 206 (08/13/18 Hr'g Tr. at 109).  Turning to the merits of his immigration case, the IJ found Garcia ineligible for Cancellation of Removal because he had not met his burden of establishing ten years of continuous presence in the United States nor had he shown that his removal would cause exceptional and extremely unusual

hardship for his qualifying relatives. *Id.* at 206–09 (08/13/18 Hr'g Tr. at 109–12). The IJ, however, granted Garcia's request for voluntary departure. *Id.* at 209 (08/13/18 Hr'g Tr. at 112).

Garcia filed a notice of appeal with the BIA. *Id.* at 64–72 (Notice of Appeal). While his appeal was pending, USCIS determined by clear and convincing evidence that he did not enter the marriage for the purpose of evading immigration law, 8 U.S.C. § 1255(e)(3), and approved his I-130 petition, A.R. at 15 (Approval Notice).

Despite the approval of his I-130 petition, Garcia still must clear a series of hurdles before he can become a permanent resident. Noncitizens who entered the United States without inspection, like Garcia, must travel to a United States consulate abroad to apply for an immigrant visa. *Cf.* 8 C.F.R. § 245.1(b)(3) (providing that noncitizens are ineligible for adjustment of status to lawful permanent residence in the United States if they were "not admitted or paroled following inspection by an immigration officer"). The catch, however, is that by leaving the United States, noncitizens who have been unlawfully present in the United States for more than one year become inadmissible to the United States for ten years from the date of departure. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II). To sidestep this ten-year bar due to previous unlawful presence, noncitizens seeking permanent residency first must travel abroad for consulate processing, and then, if the consular officer finds that the noncitizen is inadmissible, submit an I-601, Application for a Waiver of Inadmissibility. *See* 8 U.S.C. § 1182(a)(9)(B)(v) (permitting the Attorney General to waive this bar on admission for immigrants who are the spouse of a U.S. citizen if refusal of admission would result in "extreme hardship" to the U.S. citizen spouse). USCIS, however, could take over a year to process the waiver of inadmissibility, during which a noncitizen remains abroad and is separated from their U.S. citizen relatives. Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536 (Jan. 3, 2013). To reduce the time that applicants for the waiver are separated from their U.S. citizen relatives, USCIS amended its regulations in 2013 to permit applicants to apply for a provisional unlawful presence waiver while in the United States and prior to departing the United States for their consulate interview. *Id.*

This workaround did not extend to noncitizens in removal proceedings, "unless the removal proceedings are *administratively closed* and have not been recalendared at the time of

filing the application for a provisional unlawful presence waiver." 8 C.F.R. § 212.7(e)(4)(iii) (emphasis added). Until recently, a noncitizen in removal proceedings, like Garcia, who sought to apply for a provisional unlawful presence waiver would request that the IJ administratively close their proceedings, and then, once closed, would apply for the provisional waiver.

Garcia's path to permanent residency already was difficult, but subsequent limits to the availability of administrative closure introduced another impediment. In 2018, then-Attorney General Sessions directed the BIA to refer a recent BIA decision to himself for further review pursuant to 8 C.F.R. § 1003.1(h)(1)(i). In his decision, *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018), the Attorney General held that immigration judges and the BIA did not have general authority to grant administrative closure.

On May 10, 2020, Garcia filed a supplemental motion with the BIA stating that USCIS had approved his I-130 petition and requesting that the BIA administratively close his proceedings or, in the alternative, remand his case to the IJ with instructions for administrative closure so that he could apply for a provisional unlawful presence waiver. A.R. at 7–44 (Garcia's Mot. to Remand). The BIA, relying on *Castro-Tum*, denied Garcia's request for administrative closure. *Id.* at 4–5 (BIA Decision at 2–3). The BIA also concluded that the IJ had not abused its discretion in denying his application for Cancellation of Removal or request for a continuance. *Id.* at 3–4 (BIA Decision at 1–2). Garcia does not challenge in this appeal the IJ's denial of a continuance nor the denial of Cancellation of Removal.

Garcia timely petitioned this court for review. We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1252(a)(5).

## II. ANALYSIS

On appeal, Garcia argues that IJs and the BIA have authority under 8 C.F.R. § 212.7(e)(4)(iii) to grant administrative closure for the limited purpose of permitting noncitizens to apply for a provisional unlawful presence waiver. We conclude that 8 C.F.R. § 212.7(e)(4)(iii), in conjunction with 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii), gives IJs and the BIA the authority for administrative closure to permit noncitizens to apply for and receive provisional unlawful presence waivers.

For at least three decades, immigration judges and the BIA regularly administratively closed cases. *See, e.g.*, Memorandum from William R. Robie, Chief Immigration Judge, Exec. Off. for Immigr. Rev., to All Immigration Judges 1 (Mar. 7, 1984), https://www.justice.gov/sites/default/files/eoir/legacy/2001/09/26/84-2.pdf (providing that if a noncitizen fails to appear at a hearing, the immigration judge may "order that the case be administratively closed with no further action to be taken"); *Matter of Amico*, 19 I. & N. Dec. 652, 653 (BIA 1988) (referencing administrative closure). In *Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012), the BIA explicitly grounded IJs' and the BIA's administrative closure power in their ability under 8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii), respectively, "to take any action necessary and appropriate for the disposition of the case."[1] *Id.* at 693. As an example of when administrative closure may be appropriate and necessary for the disposition of a case, the BIA pointed to when a noncitizen "demonstrates that he or she is the beneficiary of an approved visa petition filed by a lawful permanent resident spouse who is actively pursuing, but has not yet completed, an application for naturalization." *Id.* at 696. In 2017, the BIA clarified that "the primary consideration for an Immigration Judge in determining whether to administratively close or recalendar proceedings is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed and be resolved on the merits." *Matter of W-Y-U-*, 27 I. & N. Dec. 17, 20 (BIA 2017).

Then, in 2018, then-Attorney General Sessions concluded in *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018), that immigration judges and the BIA did not, in fact, have the general authority to grant administrative closure. At the outset, the Attorney General observed, "[i]mmigration judges may 'exercise the powers and duties delegated to them by the [INA] and by the Attorney General through regulation,' and 'shall be governed by the provisions and limitations prescribed by the [INA]' and relevant regulations and Board decisions." *Id.* at 283 (second and third alterations in original) (quoting 8 C.F.R. § 1003.10(b), (d)). "The Board's

---

[1]Section 1003.10(b) provides that "immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." Section 1003.1(d)(1)(ii), which is nearly identical to § 1003.10(b), states that "Board members shall exercise their independent judgment and discretion in considering and determining the cases coming before the Board, and a panel or Board member to whom a case is assigned may take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case."

authority is limited to 'the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it,' and the Board is 'governed by the provisions and limitations prescribed by applicable law, regulations, and procedures, and by decisions of the Attorney General.'" *Id.* at 283–84 (quoting 8 C.F.R. § 1003.1(d)(1)).

The *Castro-Tum* opinion observed that the parties agreed that no statute or regulation expressly provides the general authority to grant administrative closure. *Id.* at 284. The Attorney General then concluded that the two regulations primarily relied upon in *Avetisyan*, 8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii), did not implicitly confer a general authority to grant administrative closure. *Id.* at 285. "Grants of general authority to take measures 'appropriate and necessary for the disposition of such cases' would not ordinarily include the authority to suspend such cases indefinitely. Administrative closure in fact is the antithesis of a final disposition." *Id.* The Attorney General also noted that administrative closure would conflict with a later portion of those regulations providing that the immigration judge or BIA resolve cases "in a timely fashion." *Id.*

Other regulations issued by the Attorney General explicitly permit—or even mandate— administrative closure in certain circumstances. *See id.* at 276–78 (collecting regulations). These regulations, the Attorney General observed, do not provide a blanket authority to grant administrative closure. *Id.* at 287. In fact, the Attorney General contended that "[i]nterpreting the existing regulations to provide a general authority to grant administrative closure would also make the specific delegations that Attorneys General have made in this area largely superfluous." *Id.* In cases where a brief pause in the proceedings is appropriate, the Attorney General noted that immigration judges may still grant a continuance, which is expressly permitted by regulation. *Id.* at 292–93.

What about § 212.7(e)(4)(iii), which requires that any noncitizen in removal proceedings obtain administrative closure of their case before applying for a provisional unlawful presence waiver? In a footnote, the Attorney General stated that IJs did not have authority to grant administrative closure to permit noncitizens to apply for a provisional unlawful presence waiver, notwithstanding § 212.7(e)(4)(iii)'s requirement that any removal proceedings be administratively closed in order to permit the noncitizen to apply for a provisional waiver.

"Regulations that apply only to DHS do not provide authorization for an immigration judge or the Board to administratively close or terminate an immigration proceeding." *Id.* at 278 n.3. Instead, "only the Attorney General may expand the authority of immigration judges or the Board." *Id.* at 287 n.9. Thus, the Attorney General reasoned, § 212.7(e)(4)(iii) "cannot be an *independent* source of authority for administrative closure." *Id.* (emphasis added). The Attorney General held that "immigration judges and the Board may only administratively close a case where a previous regulation or a previous judicially approved settlement expressly authorizes such an action." *Id.* at 272.

The Attorney General's decision in *Castro-Tum* is not the last word on this issue. We review questions of law—such as the scope of IJs' and the BIA's authority for administrative closure—de novo. *See Camara v. Holder*, 705 F.3d 219, 224 (6th Cir. 2013). If the regulation is genuinely ambiguous, we defer to the agency's reasonable interpretation of its own regulations. *Kisor v. Wilkie*, __U.S. __, 139 S. Ct. 2400, 2415 (2019).

In *Hernandez-Serrano v. Barr*, 981 F.3d 459 (6th Cir. 2020), a divided panel of this court concurred with *Castro-Tum* that neither 8 C.F.R. § 1003.10(b) nor 8 C.F.R. § 1003.1(d)(1)(ii) gave IJs or the BIA general authority to administratively close immigration cases. The petitioner in *Hernandez-Serrano* moved for administrative closure in the immigration court while USCIS adjudicated his petition for Special Immigrant Juvenile status ("SIJS"), a visa available to noncitizen children whose parents have abused, neglected, or abandoned them. *Id.* at 461. The IJ denied the petitioner's request for administrative closure, denied the petitioner's other requested relief, and ordered him removed. *Id.* While the petitioner's appeal was pending with the BIA, USCIS approved his petition for SIJS, and the petitioner moved to remand his case to the IJ for administrative closure. *Id.* The BIA—bound by *Castro-Tum*—denied the petitioner's motion to remand and dismissed his appeal. *Id.*

We held that 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii) did not delegate to IJs or the BIA a general authority to administratively close cases. *Id.* at 463. In interpreting these regulations, the majority emphasized that these regulations permit the IJ and the BIA to take actions that are "necessary for the disposition" of the immigration case and that IJs have the duty to "'resolve the questions before them in a timely' manner." *Id.* (quoting *Castro-Tum*, 27 I. & N.

Dec. at 285). In practice, however, the majority observed that "[t]he result of administrative closure . . . is that immigration cases leave an IJ's active calendar and, more often than not, never come back. Thus the reality is that, in hundreds of thousands of cases, administrative closure has amounted to a decision not to apply the Nation's immigration laws at all." *Id.* Accordingly, the majority "agree[d] with the Attorney General that §§ 1003.10 and 1003.1(d) do not delegate to IJs or the Board 'the general authority to suspend indefinitely immigration proceedings by administrative closure.'" *Id.* at 466 (quoting *Castro-Tum*, 27 I & N. Dec. at 272).[2]

*Hernandez-Serrano* went on to consider whether IJs and the BIA might have the limited authority to close a case administratively so that a noncitizen can apply for a provisional unlawful presence waiver. In *Castro-Tum*, the Attorney General determined that noncitizens could seek administrative closure to comply with 8 C.F.R. § 212.7(e)(4)(iii) only where regulations promulgated by the Attorney General expressly permitted administrative closure. 27 I. & N. Dec. at 287 n.9. The petitioner in *Hernandez-Serrano* cited 8 C.F.R. § 212.7 as an example of when a pending removal proceeding would prevent a noncitizen from obtaining immigration status, and thus when administrative closure was appropriate and necessary for the disposition of the case. 981 F.3d at 466–67. This court in *Hernandez-Serrano* did not reach whether IJs and the BIA retained authority to grant administrative closure for this limited purpose because § 212.7(e)(4)(iii) did not apply to the petitioner's circumstances and the petitioner had not exhausted this argument at the BIA. *Id.* at 467; *see also id.* at 474 (Clay, J., dissenting) ("The majority does not foreclose the possibility that an IJ could decide that administrative closure is appropriate and necessary for the disposition in a situation where a non-citizen's 'removal proceedings itself legally bar[ ] him from obtaining an adjustment of status for which he appear[s] eligible under a statute or regulation,' such as when a non-citizen 'is eligible for adjustment of status but barred from obtaining it by § 212.7(e)(4)(iii).'" (alterations in original) (quoting Maj. Op. at 467)).

---

[2]The other circuits to consider this issue after *Castro-Tum* have concluded, however, that IJs and the BIA do have the general authority for administrative closure. *Arcos Sanchez v. Att'y Gen. United States of Am.*, 997 F.3d 113 (3d Cir. 2021); *Meza Morales v. Barr*, 973 F.3d 656 (7th Cir. 2020) (Barrett, J.); *Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019).

Here, we squarely confront this question and conclude that 8 C.F.R. § 212.7(e)(4)(iii), in conjunction with 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii), provides IJs and the BIA the authority for administrative closure to permit noncitizens to apply for and receive provisional unlawful presence waivers. Administrative closure is "appropriate and necessary" in this circumstance for the disposition of Garcia's immigration case. Absent administrative closure, Garcia and other noncitizens in removal proceedings who are seeking permanent residency would be unable to apply for a provisional unlawful presence waiver despite the authorizing regulation.

Permitting administrative closure for the limited purpose of allowing noncitizens to apply for provisional unlawful presence waivers pursuant to 8 C.F.R. § 212.7(e)(4)(iii) will not lead to non-adjudication of immigration cases. Thus, the concern raised in *Hernandez-Serrano* that a general authority to grant administrative closure results in non-adjudication of immigration cases is not present. Administrative closure for the purpose of applying for a provisional unlawful presence waiver "bring[s] an end to the removal process" and permits "the non-citizen [to] voluntarily depart the U.S. for an immigrant visa appointment abroad." Pet. Br. at 14. Generally, a noncitizen will, upon USCIS's approval of their provisional unlawful presence waiver, seek to recalendar and terminate their removal proceedings. *See, e.g.*, *Romero*, 937 F.3d at 287 ("Romero advised that if his case were administratively closed, then once the waiver had been approved, he intended to move to re-calendar and terminate removal proceedings so that he could then go through the consular process in Honduras."); *see also* Ariel Brown, Immigr. Legal Res. Ctr., *I-601A Provisional Waiver: Process, Updates, and Pitfalls to Avoid*, at 7 (June 2019), https://www.ilrc.org/sites/default/files/resources/i-601a_process._updates._and_pitfalls_to_avoid_june_2019.pdf (advising noncitizens to move to recalendar and then terminate their removal proceedings upon approval of their provisional unlawful presence waiver or upon receiving their immigrant visa).

True, a noncitizen in removal proceedings whose cases is not administratively closed may still submit an I-601 Waiver of Inadmissibility after they complete their consular interview and are determined inadmissible. This old path, however, deterred noncitizens in removal proceedings from obtaining legal status as permanent residents. Noncitizens were separated

from U.S. citizen family members while they awaited USCIS's adjudication of their waiver of inadmissibility. In DHS's notice announcing the provisional unlawful presence waiver final rule, the agency recognized that the "often lengthy processing times and uncertainty about whether they qualify for a waiver of the unlawful presence inadmissibility grounds" left "many immediate relatives who may qualify for an immigrant visa [] reluctant to proceed abroad to seek an immigrant visa." 78 Fed. Reg. at 536. Thus, administrative closure for the limited purpose of permitting noncitizens to apply for provisional unlawful presence waivers increases the likelihood that noncitizens will obtain legal status and resolve their immigration proceedings.

The government contends that 8 C.F.R. § 212.7(e)(4)(iii) cannot provide IJs and BIAs with the authority for administrative closure because it is a DHS regulation, not a Department of Justice regulation. Gov't Br. at 17–21. As the government correctly notes, immigration judges and the BIA can exercise only the power delegated to them by the Attorney General. *Id.* at 19. And here, DHS, not the Attorney General, promulgated § 212.7(e)(4)(iii).[3] Our decision here, however, does not rest on 8 C.F.R. § 212.7(e)(4)(iii) alone. Instead, we conclude that an application for a provisional unlawful presence waiver, which requires administrative closure for noncitizens in removal proceedings, is a limited circumstance where administrative closure is "appropriate and necessary" under §§ 1003.10(b) and 1003.1(d)(1)(ii).

The American Immigration Lawyers Association submitted an amicus brief in support of Garcia, in which it argues that another regulation permitting IJs to adjourn cases, 8 C.F.R. § 1240.6, gives IJs "the more limited power to grant a finite, brief period of administrative closure, where such period of limited closure upholds the IJ's regulatory mandate to process cases in a timely manner." Amicus Br. at 4. In a supplemental brief in response to the amicus brief, the government notes that Garcia did not raise this argument to the BIA. Resp. to Amicus Br. at 2. Thus, the government argues, Garcia has not exhausted this argument before the agency, and we do not have jurisdiction to consider this argument under 8 U.S.C. § 1252(d)(1).

---

[3]In Garcia's opening brief and reply brief, he primarily argues that we should treat 8 C.F.R. § 212.7(e)(4)(iii) as if it were a regulation issued by the Attorney General because he contends that the Attorney General likely provided input on the regulation. Pet. Br. at 11–15; Pet. Reply Br. at 6–8. Garcia incorporates by reference to *Hernandez-Serrano* the question left open by that decision of whether IJs and the BIA have a more limited authority for administrative closure to satisfy the requirements of § 212.7(e)(4)(iii). Pet. Br. at 1–2.

*Id.* at 2–3.  Nor, as the government notes, did Garcia raise this argument in his opening brief or reply brief before this court.  *Id.* at 4.  We will not consider the 8 C.F.R. § 1240.6 argument because Garcia did not raise this argument at the BIA or in his opening or reply briefs, and we reserve that matter for another day.

*Hernandez-Serrano* left unanswered the question of whether IJs and the BIA retain the authority to grant administrative closure so that noncitizens in removal proceedings may apply for a provisional unlawful presence waiver.  Here, we answer in the affirmative and conclude that immigration judges and the BIA have authority under §§ 1003.10(b) and 1003.1(d)(1)(ii) to grant administrative closure so that noncitizens may meet the requirements of § 212.7(e)(4)(iii).

## III.  CONCLUSION

We conclude that immigration judges and the BIA retain the authority to grant administrative closure so that noncitizens may apply for a provisional unlawful presence waiver.  Thus, we **GRANT** the petition for review, **VACATE** the BIA's order, and **REMAND** for further proceedings consistent with this opinion.